[No. 19541. Department Two. April 22, 1926.]

FRANK A. BOOZER, *Respondent,* v. W. R. BOOZER, *Appellant.*[1]

[1] JURY (8)—RIGHT TO JURY TRIAL—LEGAL AND EQUITABLE ISSUES IN SAME ACTION. In an action upon a promissory note, equity will assume jurisdiction and a jury trial is properly denied where, under the answer and allegations of the parties, it could not be determined without an accounting covering many items which the jury could not keep any record of.

[2] PARTNERSHIP (89)—DISSOLUTION AND ACCOUNTING—ACTIONS—DEFENSES. In an action between two former members of a partnership consisting of four brothers, upon a note given for the purchase price of the plaintiff's interest in the partnership, the defense that the note was induced by fraudulent representations that plaintiff had a one-fourth interest in the partnership is properly excluded; as it will be presumed that their interests were equal, especially where all were familiar with the transactions and regarded it as an equal partnership.

[3] PARTNERSHIP (84)—ESTOPPEL (23)—PRIVATE ACCOUNTING—PREJUDICE TO PERSON CLAIMING ESTOPPEL. A member of a partnership is estopped to object to an account rendered to him, where his delay in objecting thereto caused injury to the other party in that he had relied thereon and destroyed material evidence consisting of books and records.

[4] APPEAL (451)—HARMLESS ERROR—ADMISSION OF EVIDENCE—RULINGS IN CASES TRIED WITHOUT A JURY. Error cannot be assigned on the admission of improper evidence in a trial tried to the court.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 31, 1925,

[1] Reported in 245 Pac. 403.

upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Williams & Cornelius,* for appellant.

*Fred E. Butler* and *McCarthy, Edge & Lantz,* for respondent.

Main, J.—This action was based on a promissory note. The defendant admitted the execution of the note, denied liability and pleaded affirmatively a number of defenses. Over the objection of the defendant, the cause was tried to the court without a jury and resulted in findings of fact, conclusions of law and a judgment sustaining a recovery in the sum of thirteen thousand dollars, together with interest. From this judgment, the defendant appeals.

In the fall of 1917, the appellant, respondent, Dolph E. Boozer and Fred A. Boozer, all brothers, purchased a ranch, consisting of approximately eight thousand acres of land in Asotin county, and thereafter operated the same as partners. About May 1, 1921, Fred transferred his interest to Dolph and went to Alberta, Canada. Thereafter, the other three brothers continued to operate the ranch.

On July 17, 1922, the three brothers that were then conducting the operations of the partnership entered into a contract by which they were to transfer the Asotin ranch for a large tract of land in Saskatchewan, Canada. Both properties were heavily incumbered. On or about July 26, negotiations took place between the appellant and the respondent, Dolph being present, by which the respondent desired either to acquire the entire interest in the partnership or sell and transfer his interest to the appellant. Nothing definite was done in this regard, and on July 28, 1922, the three brothers met at Lewiston, Idaho, for the purpose of

closing up the transaction and making the necessary
transfers by which the Asotin property was to be ex-
changed for the Saskatchewan property. There were
present a number of others, who were interested in see-
ing that the deal was consummated. At this time the
respondent refused to sign the necessary papers to
make the transfer.

Further negotiations took place between him and
the appellant, Dolph being present, which finally
resulted in a contract by which the respondent sold his
interest in the partnership to the appellant, for the
sum of thirteen thousand dollars to be paid by the ex-
ecution of a promissory note due on or before ten years
after the date thereof. The note bore interest at six
per cent per annum, payable annually on January 1
of each year. In the contract is this provision:

"The party of the first part [respondent] shall im-
mediately upon the execution hereof render to the
party of the second part a full, true, and complete ac-
counting of all wheat grown, shipped and sold by the
parties hereto during the years 1921 and 1922, and
shall upon completion of the accounting make a prompt
adjustment if such adjustment appears necessary."

This contract is signed by the appellant and respond-
ent, and at the time of its execution, the appellant
executed the promissory note which is involved in this
proceeding. Something like two weeks subsequent to
this, the respondent delivered, or caused to be delivered,
to the appellant a statement in compliance with the
excerpt from the contract above quoted. Soon there-
after the appellant and Dolph went to Canada to take
charge of the Saskatchewan property. Before leaving,
the appellant made no objection to the account as ren-
dered and made no formal demand for a more complete
accounting, until after the present action was instituted,
approximately two years later. The Saskatchewan

enterprise was a failure. The appellant and Dolph returned to Spokane, and subsequently the present action was instituted.

[1] The first question is whether the court erred in denying the appellant a jury trial. One of the affirmative defenses was that the respondent had failed to make a full, true and correct accounting of all wheat grown, shipped and sold during the years 1921 and 1922, as required by the contract. The evidence went into great detail and covered many items concerning this matter. The jury would have had no adequate facilities for keeping a record of these items, as the ordinary mind could not keep them in memory, and the verdict, if the case had been tried to a jury, would of necessity have been one without adequate consideration of many of the matters involved. In *Lindley v. McGlauflin*, 57 Wash. 581, 107 Pac. 355, it is said:

"Manifestly the right of the parties could not be determined except by taking an accounting between them, and as the transactions appeared by the pleadings to be extensive and varied, it necessarily involved a long and complicated accounting. It has long been the rule that these conditions alone justified the assumption of jurisdiction by a court of equity. Indeed, in this state it is especially provided by statute (Rem. & Bal. Code, § 370) that a compulsory order of reference may be made when the trial of an issue of fact shall require the examination of a long account on either side; this, on the principle, of course, that the proceeding was formerly cognizable in chancery and not subject to trial as an action at law; and, of course, if the court may make a compulsory order of reference in such a case, it may make the accounting itself without the aid of a jury. Jurisdiction of equity in this class of cases had its rise in the inadequacy of the common law remedy. A court of law sitting with a jury is not a tribunal constituted so as to try an action involving a long account and reach an accurate result.

The jury have no adequate facilities for keeping records of the several items going to make up the account, and the ordinary mind cannot keep them in memory. The result must necessarily be a verdict without adequate consideration of the matters involved, resulting oftener than otherwise in rank injustice to one party or the other.''

There was no error in disallowing the jury trial, even though the action, as made by the complaint, was one at law upon a promissory note.

[2] The next question is, whether the trial court ruled correctly in rejecting any evidence in support of the first affirmative defense. Under this defense, the appellant sought to show that he was induced to sign the promissory note by statements of the respondent that the latter had a full one-fourth interest in the partnership, when in truth and in fact he did not have an interest to that extent. Assuming that by the contract of July 28 the respondent sold his interest in the partnership, it will be presumed that he had an equal interest with the other partners, irrespective of the manner in which they may have contributed to the capital. In 20 R. C. L. 1023, it is said:

''The shares of partners are presumed to be equal where nothing appears to the contrary, and therefore, in the absence of any stipulations or other evidence from which an agreement on the subject may be inferred, all the partners will be adjudged entitled to share equally in the profits and be required equally to bear the losses, irrespective of the manner in which they may have contributed to the capital of the firm.''

If the contract be construed as transferring the respondent's share of the proceeds in the partnership after dissolution and the payment of debts, then the respondent's interest therein could only be determined by an accounting in an action to which all the partners would be necessary parties. In 30 Cyc. 722, it is said:

"To actions for dissolution and accounting all the partners are necessary parties, at least all within the jurisdiction; for unless all are brought into the litigation a decree cannot be made which will finally dispose of all questions involved. When all the partners are living and within the jurisdiction, they are ordinarily the only necessary or proper parties to such actions."

In addition to this, the evidence shows that from the beginning all the partners were familiar with the various transactions, and all regarded each of the others as equal partners. Whether the respondent had a one-fourth interest in the partnership, or the amount of money which he had invested therein, are matters which, it appears to us, the appellant did not have a right to go into in this proceeding.

[3] The next question is, whether the appellant had the right to question the accounting which was made to him just shortly prior to the time that he and Dolph went to Canada after the transaction was closed. Upon this question the trial court found:

"That as and for compliance with the terms and in performance of said Exhibit A relative to rendering an account, plaintiff delivered to defendant Exhibits 3 and 4 herein; on or about the 18th day of August, 1922, in Lewiston, Idaho; that plaintiff then and there requested defendant to and defendant promised and agreed to notify plaintiff prior to the parties leaving that vicinity, which they contemplated doing and several days later did do, if said Exhibits 3 and 4 should not be considered by defendant as satisfactory compliance therewith or performance thereof, or if corrections or additional information or statements pertaining thereto should be desired or required by defendant; that plaintiff and defendant remained in said vicinity for several days; and defendant made no effort to and failed to notify plaintiff of any dissatisfaction, if any, with such compliance and performance, and did not at any time ask for corrections, additional information or statements pertaining thereto and did not in

any manner object thereto and accepted and ratified the same as in compliance and performance thereof; that in reliance upon said promise and said acceptance and ratification, plaintiff, upon leaving said vicinity, destroyed material evidence consisting of books, bank stubs and other records and documents, and plaintiff then and thereafter lost such other material evidence and plaintiff has, as a result thereof, changed his position adversely and irreparably, and defendant is estopped from questioning the sufficiency of said exhibits 3 and 4 as compliance with the terms and performance of said Exhibit A, relative to rendering an account.''

It appears from that finding that the trial court was of the opinion that, owing to the delay and the change of the position of the respondent, the appellant was not entitled to question the correctness of the account. In *Merritt v. Meisenheimer,* 84 Wash. 174, 146 Pac. 370, with reference to an account stated, it is said:

''A failure to object to an account rendered does not admit the correctness of the account so as to make it a binding unimpeachable obligation. There may be cases which hold that this is so, but, by better authority —we may say that it is almost universally so held—in the absence of circumstances which would create an estoppel, the reception of the account raises no more than a presumption of assent on the part of the debtor, which may be rebutted.''

Further in the same opinion is this:

''This court has defined an estoppel on more than one occasion. There can be no estoppel unless there is a direct benefit on the one hand or an injury on the other.''

In *Peck v. Peck,* 76 Wash. 548, 137 Pac. 137, it is said:

''On the contrary, our own courts recognize the necessity of a direct benefit on the one hand or an injury on the other to create or effect an estoppel.''

In the present case, the delay of the appellant resulted in an injury to the respondent, because, relying upon the appellant's failure to object to the account, the respondent, as the court found, "destroyed material evidence consisting of books, bank stubs and other records and documents." The view of the trial court on the matter of estoppel was correct.

[4] Complaint is made of the ruling of the trial court in admitting certain evidence, but we find no error in this regard which would justify, even if the evidence was wrongfully admitted, a reversal. The case was tried to the court without a jury, and it has been many times said in such cases this court will disregard all evidence that it may deem immaterial. Had the evidence objected to by the appellant been excluded, it would not, as it seems to us, have changed the result.

There are a number of other questions discussed, which appear to be questions of fact only. The record is long and the evidence has been carefully read. The trial court, where there was a conflict in the testimony, believed that the evidence offered by the respondent was more credible and should be believed. After considering the evidence we have reached the same conclusion.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, MACKINTOSH, and PARKER, JJ., concur.