[No. 23075. Department One. September 1, 1931.]

J. J. THEODORE, *Respondent*, v. WASHINGTON NATIONAL INVESTMENT COMPANY *et al., Appellants.*[1]

*LaBerge, Cheney & Hutcheson,* for appellants.
*Richards, Gilbert & Conklin,* for respondent.

PARKER, J.—The plaintiff, J. J. Theodore, by his original complaint in this action, commenced in the superior court for Yakima county on January 2, 1930, sought recovery from the defendant Washington Na-

[1]Reported in 2 P. (2d) 649.

tional Investment Company of eighteen bonds issued by the Northwestern Refrigerating Company, each evidencing a principal indebtedness of that company in the sum of fifty dollars; and also, in the alternative, a money judgment against the investment company for the value of the bonds in the event that delivery thereof cannot be had. The action was so commenced because Theodore was then advised, as he claims, that the bonds were then in the possession of the investment company, or in the possession of its managing agent, the Guaranty Trust Company, which made no claim to the bonds other than as agent for the investment company. On May 15, 1930, Theodore, being in the meantime advised that the trust company had physical possession of the bonds and claimed some interest in them in its own right, filed his amended complaint, making the trust company also a defendant in the action and seeking the same relief against both the investment company and the trust company as sought by him in his original complaint.

On June 3, 1930, the investment company answered Theodore's amended complaint, denying his ownership and right of possession of the bonds and, in the form of an affirmative defense and cross-complaint, alleging its ownership of the bonds; alleging that, on September 17, 1928, it delivered the bonds to the trust company as collateral security for indebtedness owing by it to the trust company; alleging the continued and present possession of the bonds by the trust company for that purpose; alleging that the trust company has no other interest in the bonds; and praying that the title to the bonds in the investment company be quieted as against Theodore's claim of ownership thereof.

On the same day, the trust company, by the same counsel, answered Theodore's amended complaint, denying his ownership and right to possession of the

bonds and, in the form of an affirmative defense and cross-complaint, alleging its interest in the bonds in harmony with the affirmative answer and cross-complaint of the investment company; and praying that its possessory right in the bonds be quieted as against Theodore's claim of ownership thereof.

Theodore replied to the affirmative matter alleged in the answers of the investment company and the trust company by denial of the same. The pleadings presented no issue as between the investment company and the trust company. The issues being so made, the cause proceeded to trial in the superior court, sitting with a jury, and resulted in a verdict and judgment awarding to Theodore relief as prayed for against both the investment company and the trust company, from which they have both appealed to this court.

The principal facts of this controversy, as we think the evidence warranted the jury in viewing them, may be summarized as follows: Since several years prior to the year 1928, the investment company and the trust company were duly organized corporations under the laws of this state, each engaged in business of the nature indicated by its name and each maintaining its place of business in Yakima.

On April 17, 1928, Richard Ross was duly elected vice-president and general manager of the investment company, and then entered upon his duties as such. On April 19, 1928, in pursuance of prior negotiations, it was agreed between Ross and the executive committee of the investment company that he sell and transfer to the investment company his established bond business then and theretofore operated by him, including his furniture, equipment, office supplies, bonds and bond deals on hand, and the good-will of the business. The details of the ultimate consummation of this transfer are not made plain by the evidence; but it, in any

event, seems plain from the evidence that Ross's bond business was, in pursuance of this agreement, turned over to the investment company at or about that time, and that Ross then became and continued to be the active general manager of the business of the investment company at its office, he not maintaining any office of his own, up until September 17, 1928, a date to be presently further noticed. Prior to Ross's becoming the general manager of the investment company, he had, on a number of occasions, sold bonds to Theodore.

On June 30, 1928, Theodore owned and had on hand bonds theretofore sold to him by Ross of the par value of seven thousand dollars. The investment company then owned and had on hand the bonds here in question of the par value of nine thousand dollars. Ross then informed Theodore that his bonds were about to be called for payment, and induced him to purchase the bonds here in question from the investment company, and pay therefor his bonds of the par value of seven thousand dollars and two thousand dollars in cash. This was agreed to, and thereupon Theodore delivered his bonds and assigned his two thousand dollars savings bank account to Ross, Theodore assuming that he was making such delivery and assignment to Ross for the investment company. Ross, then having the custody of the bonds here in question for the investment company, delivered them to Theodore. On the same day, Theodore deposited them with the Yakima National Bank for safe keeping, taking its receipt therefor.

Ross then placed the bonds, delivered to him by Theodore, among the papers of the investment company, drew from the savings bank Theodore's savings account, amounting to two thousand dollars, and soon thereafter deposited in the bank to the credit of the investment company $1,700, evidently of the money so

drawn from the savings bank. By what claimed right he retained the other portion of that money, is not made clear by the evidence.

On August 16, 1928, Theodore was induced by Ross to get his bonds, those here in question, from the bank and deliver them to him, as Theodore was led to believe, for the investment company, Ross representing to Theodore that the bonds were being called with a view of some sort of a readjustment of the affairs of the refrigerating company. The bonds were then placed by Ross among the other papers of the investment company. Ross then gave .to Theodore a receipt for the bonds, signing only his own name. But soon thereafter, Ross was given by the secretary and treasurer of the investment company, typewritten upon the printed stationery of the investment company, a receipt reading as follows:

"August 16, 1928.

"Received this day of Richard Ross Northwestern Refrigerating Company Bonds in the denomination of $500.00 each, and numbers as follows:

"No. 57-82-83-125-126-127-128-129-130-131-132-133-134-135-136-137-138.

"Received by,

WASHINGTON NATIONAL INVEST. Co.
By M. A. Sprinkle, Sec-Tr

"In the presence of
John C. Lampert                                    Aug. 16, 1928

"NOTE: These bonds are held by the Treasurer of the Washington National Investment Co. until notified as to their distribution by the Executive committee and the receipt therefor taken up for their release."

The sale of these bonds to Theodore and all of the transactions thereafter between Theodore and Ross were consummated in the office of the investment company. All of this time, Theodore was sick, much enfeebled and scarcely able to do any business at all. Theodore is a man of but little business experience.

248

·On August 17, 1928, the management of the business of the investment company was turned over to the trust company, this by formal resolution of the trustees of the investment company, the resolution reading in part:

"Be it resolved that the Guaranty Trust Company, a corporation, be and is hereby appointed general manager of the Washington National Investment Company, with all of the powers as given to the general manager by the by-laws of the corporation. . . . Said Guaranty Trust Company being further authorized to transfer and hypothecate to itself such of the assets of the company as may be adequate to secure any and all loans or advances made by it to this company. . . ."

Ross thereupon ceased to be the manager of the business of the investment company. The bonds here in question then passed into the possession of the trust company by virtue of this management appointment, and not otherwise. The trust company did not at any time thereafter, as far as this record shows, expressly "transfer and hypothecate to itself" any of these bonds to secure loans or advances made by it to the investment company; nor, before the commencement of this action against the investment company, claim any interest in these bonds in its own right. One of the counsel for Theodore testified, touching a conversation had between himself and the general manager of the trust company just before the original commencement of this action, as follows:

"I asked him if he had the bonds in his possession and he said he did; he said he held them as liquidating agent of the Washington National Investment Company and had no interest in them other than in that capacity. I asked him what was the nature of his agency and whether there had been an assignment to him. He said there had been no assignment; that they had simply been appointed to take charge of the busi-

ness assets of the Washington National Investment Company and to liquidate it. I then asked him if the bonds were the property of the Washington National Investment Company and he said they were. I said 'The reason I am asking you this particularly is to know whether it is necessary to make the Guaranty Trust Company a party defendant as claiming an interest in these bonds' and he said it wasn't, so I drew the complaint solely against the Washington Investment Company.''

The jury evidently believed, as it had a right to, this testimony. It was not until thereafter that the trust company claimed any interest in the bonds in its own right.

■ It is first contended in behalf of appellants that the trial court erred to their prejudice in awarding to Theodore a jury trial. While recognizing that the nature of the action, as evidenced by Theodore's original and amended complaints, was but an ordinary replevin action without the usual writ seeking possession of the claimed property pending the action, and, as such, was a law action triable by jury, their counsel argue that, by reason of their defenses, pleaded affirmatively in form, followed by prayers for quieting their title and interest in the bonds, the action became one of equitable cognizance, triable by the court without a jury. They invoke the general rule that

''The nature of an action as to its being one at law or in equity is determinable, not by the complaint alone, but by a consideration of all the issues raised by all of the pleadings,''

as announced by us in *Price v. Chambers,* 148 Wash. 170, 268 Pac. 143, and our prior decisions. They also invoke the provisions of Chapter 100, Laws of 1929, p. 198, reading as follows:

''Section 1. Any person or corporation claiming to be the owner of or interested in any tangible or in-

tangible personal property may institute and maintain a suit against any person or corporation also claiming title to or any interest in such property for the purpose of adjudicating the title of the plaintiff to such property, or any interest therein, against any and all adverse claims; removing all such adverse claims as clouds upon the title of the plaintiff and quieting the title of the plaintiff against any and all such adverse claims.

"Sec. 2. The fact that any person or corporation against whom such action may be brought is in the possession of such property, or evidence of title to such property, shall not prevent the maintenance of such suit."

If this argument can be successfully maintained touching the issues made by these pleadings, then it would seem to follow that a defendant in any replevin action can convert the action into one of equitable cognizance by merely pleading in his answer, in affirmative form, facts which, in legal effect, amount only to denial of the allegations of the complaint, followed by a prayer that his title and right of possession of the property be quieted in him as against the claims thereto made by the plaintiff. A defendant in a replevin or any other pure law action, in its inception, cannot, we think, so convert it into one of equitable cognizance.

An answer, affirmative in form, will not have, for the purpose of trial, any different effect than a general denial unless, under it, evidence becomes admissible which would not be admissible under a general denial. In *Chamberlin v. Winn*, 1 Wash. 501, 20 Pac. 780, decided in 1889 by the territorial supreme court, Judge Burke, speaking for the court, said:

"In the course of the trial, the plaintiff being called as a witness in her own behalf, the defendant sought by cross-examination to prove that a third person was the owner, and entitled to the possession of the per-

sonal property in controversy. To the question put for that purpose objection was made by the plaintiff and sustained by the court, on the ground that the defendant could not prove property in a third person under the general denial.

. "The ruling of the court upon this question was erroneous. In an action like this, brought to recover possession of specific personal property, the defendant may, under the general denial, prove ownership or the right of possession in a third person. Pom. Rem. (2d ed.), § 678; *Caldwell v. Bruggerman,* 4 Minn. 270 (Gil. 190); *Woodworth v. Knowlton,* 22 Cal. 164; *Schulenberg v. Harriman,* 21 Wall. 44; *Sparks v. Heritage,* 45 Ind. 66; *Timp v. Dockham,* 32 Wis. 146; *Rockwell v. Saunders,* 19 Barb. 473."

This view of the law was later adhered to by this court in *Harvey v. Ivory,* 35 Wash. 397, 77 Pac. 725, *Coey v. Low,* 36 Wash. 10, 77 Pac. 1077, and *Shine v. Culver,* 42 Wash. 484, 85 Pac. 271.

We are therefore of the opinion, unless there can be found in the answers of one or the other of appellants some assertion of claim to these bonds resting upon equitable rather than legal considerations, that Theodore had the right to have the case tried by jury as it was tried. Looking to the affirmative allegations of the answer of appellant investment company, we find nothing therein more than an assertion of the legal ownership of the bonds and its right of possession as against Theodore. This it was privileged to prove to the fullest extent under its denial of the allegations of Theodore's complaint. Looking to the affirmative allegations of the answer of appellant trust company, we find nothing more than an assertion of its rightful possession of the bonds as against Theodore. True, it alleged the holding of the bonds by it as the property of the investment company and as collateral security for indebtedness owing to it by the investment com-

pany. The trust company, however, makes no allegation of fact or any prayer looking to the foreclosure of its claim of collateral security. It seeks no relief other than that its right of possession be adjudged superior to that of Theodore. This it was privileged to support by proof to the fullest extent under its general denial of the allegations of Theodore's complaint.

Counsel for appellants call our attention to a number of our decisions to support their contention that respondent was not entitled to a jury trial. We notice these in chronological order.

*Rohrer v. Snyder,* 29 Wash. 199, 69 Pac. 748, was an action to quiet title to land which was not in the physical possession of anyone, brought under section 551 of the territorial code of 1881, now Rem. Comp. Stat., § 809. The action was held to be of equitable cognizance, and therefore triable without a jury. Clearly, it was such under that statute, in view of the fact that it was not a seeking to recover possession of the land.

*Peterson v. Philadelphia Mtg. & Tr. Co.,* 33 Wash. 464, 74 Pac. 585, was an action to recover real property, and, as originally commenced, was concededly a law action, triable by jury. The defendant mortgage company, however, was in possession as mortgagee, with the right, under the terms of the mortgage contract, to collect the rents and apply them towards the payment of the mortgage indebtedness owing to it. This was one of its affirmative defenses, thereby seeking to protect not only its right of possession, but its continuing right to collect the rents and apply them towards the satisfaction of the unsatisfied mortgage debt. This defense was held to be equitable in its nature, and as having the effect of converting the action into one of equitable cognizance. This decision may seem to lend some support to this contention of appellants' counsel, but we think it is not decisive in their favor.

*Cline Piano Co. v. Sherwood,* 57 Wash. 239, 106 Pac. 742, was an action seeking injunction to prevent alleged unlawful sale of the plaintiff's property under an execution in the hands of the sheriff. It was there held that, while the plaintiff would have the right to institute a law action for damages, it also had the right to institute an equitable action seeking injunctive relief. The injunctive relief was sought prior to any resulting damages. Of course, the action was of equitable cognizance.

*Nolan v. Pacific Warehouse Co.,* 67 Wash. 173, 121 Pac. 451, Ann. Cas. 1913D 167, was an action seeking recovery of damages for breach of a contract. The defendant denied the breach and, by cross-complaint, sought foreclosure of a trust deed against the plaintiff, an issue which was properly brought into the action. Thus, it became one of equitable cognizance.

*Thiel v. Miller,* 122 Wash. 52, 209 Pac. 1081, 26 A. L. R. 523, was an action seeking forfeiture of a vendee's right under a conditional sale contract for the sale of land. The defendant, by answer and cross-complaint, alleged facts entitling it to reformation of the contract, and thus made it an action of equitable cognizance.

*Boozer v. Boozer,* 139 Wash. 34, 245 Pac. 403, was an action seeking recovery upon a promissory note given in connection with a contract. The defense was fraud, pleading facts entitling the defendant to rescission of the contract and also to an accounting. It was held that thereby the action became one of equitable cognizance triable by the court.

*Sheane Auto Co. v. Williams,* 143 Wash. 352, 255 Pac. 147, was an action seeking recovery of an alleged balance due upon the purchase price of an automobile. The defense was fraud, and also a seeking of reforma-

tion of the contract. Thus, it became one of equitable cognizance.

*Santmyer v. Clemmancs,* 147 Wash. 354, 266 Pac. 148, was an action to recover real property. The question of its becoming one of equitable cognizance appears to have been but briefly presented and considered. We held that there was no error in the trial court's denying a jury trial because of the defendants' answer pleading facts resting their claim of right to possession upon an express trust. This was regarded as injecting into the case a matter of equitable cognizance.

*Crawford & Conover v. Traynor,* 147 Wash. 648, 267 Pac. 39, was an action to recover possession of real property. The answer pleaded facts entitling the defendant to reformation of the contract under which they held possession of the land. Thus, there was brought into the action a matter of equitable cognizance.

*Price v. Chambers,* 148 Wash. 170, 268 Pac. 143, was an action to recover from an attorney moneys in his hands claimed to belong to Price, his client, against which he claimed an attorney's lien and which in his answer he sought to have established and foreclosed against the fund. This injected into the case a question of equitable cognizance.

*Millett v. Pacific Cider & Vinegar Co.,* 151 Wash. 561, 276 Pac. 863, was an action upon a promissory note. The defendants, by answer and cross-complaint, sought, on the ground of fraud, cancellation of a contract and the note executed incident thereto, and return of money paid on the contract. Thus, there was injected into that case a matter of equitable cognizance.

Counsel for Theodore invoke, in support of his right of trial by jury, the law as announced in our decision in *Northern Life Ins. Co. v. Walker,* 123 Wash. 203,

212 Pac. 277. We think that decision is controlling of this branch of the case in favor of Theodore. By that action, as originally commenced, the insurance company sought cancellation of its policy after the death of the insured, upon the theory of his having committed suicide, which, if true, would have absolved the insurance company from liability. The action was commenced before the beneficiary, the wife of the insured, commenced an action to recover upon the policy, her time for doing so not having expired. She filed her answer in the action commenced by the insurance company, denying that the death of her husband was caused by suicide, and alleged, by way of cross-complaint, affirmative facts plainly sufficient to entitle her to recover as beneficiary under the policy, praying for recovery accordingly. This was held by us to be, in effect, a timely commencement of her law action for recovery upon the policy. We further held that she could not be deprived of the right of trial by jury by the insurance company's commencing, as it did prior thereto, an action which was in form equitable; that is, for cancellation of its policy. That was a Department decision of the court, and petition for rehearing *En Banc* was thereafter denied by the court *En Banc*; so it became, in effect, a majority decision of the court *En Banc*.

We have not overlooked the seemingly far-reaching language, read literally, of Chapter 100, Laws of 1929, p. 198, above quoted. We are not to forget that, by section 21, Art. I of our constitution, "the right of trial by jury shall remain inviolate." That, of course, means remain as it existed at the time of the adoption of the constitution in 1889. To give to Chapter 100 of the Laws of 1929 such far-reaching effect as is here contended for by counsel for appellants, would, it seems to us, render it unconstitutional, in violation

of the right of trial by jury as applied to this particular controversy. That statute, we conclude, is not controlling of this controversy in favor of appellants.

■ It is further contended in behalf of appellant investment company that, the action being in replevin, the proof does not show that it is maintainable against the investment company, because it has not at any time since the commencement of the action been in physical possession of the bonds. If the transfer of the bonds by the investment company to the trust company resulted merely in the trust company's holding the bonds as agent for the investment company, that is, as the manager of its business, then manifestly its possession was also the possession of the investment company. This was, in effect, decided by the jury to be the nature of the holding of the bonds by the trust company for the investment company. If it were necessary to go farther, it might well be said that, if the transfer of the bonds from the investment company to the trust company was as collateral security for indebtedness owing by it to the trust company, such transfer was wrongful and known to be wrongful by the trust company. *Andrews v. Hoeslich,* 47 Wash. 220, 91 Pac. 772, 125 Am. St. 896, 18 L. R. A (N. S.) 1265.

It is further contended in behalf of appellants that, at all events, the evidence does not support the verdict and judgment. We have carefully read all of the evidence, as apparently carefully abstracted by counsel for appellants, and are convinced to the contrary of this contention. We do not feel called upon to review the facts further than as we have above summarized their principal outstanding features. We are quite convinced that the evidence abundantly supports the verdict and judgment.

Some other claims of trial errors are made. All these we have examined, and deem it sufficient to say

that we regard them not of sufficient merit to warrant further discussion.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MAIN, JJ., concur.