# GOSMAN *v.* GOSMAN

[No. 237, September Term, 1973.]

*Decided May 1, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Paul H. Mannes*, with whom were *Stanley Klavan* and *Kaye Truxton Brooks* on the brief, for appellant.

*Audrey E. Melbourne*, with whom were *Howard E. Goldman, Robert H. Rosenbaum* and *Melbourne & Goldman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

We granted certiorari to the Court of Special Appeals in this case, in order that we might review the decree entered by the Circuit Court for Prince George's County as modified by the Court of Special Appeals.

Mr. Gosman had brought an action for a divorce a mensa et thoro against Mrs. Gosman in Prince George's County. Mrs. Gosman filed a cross-bill in which she sought a divorce a vinculo matrimonii on grounds of adultery, and alleged that she was, with her husband, a joint owner of a combination night club, restaurant, liquor store, and grocery store — an entity known as "Dawnrose" — and asked that a determination of her property rights be made, *see* Maryland Code (1974), § 3-603 (b) of the Courts and Judicial Proceedings Article; *cf. Blumenthal v. Monumental Security Storage, Inc.*, 271 Md. 298, 302-03, 316 A. 2d 243, 245-46 (1974).

The trial court entered an a vinculo decree on Mrs. Gosman's cross-bill, and having found as a fact that Mrs. Gosman and Mr. Gosman were partners in Dawnrose, awarded her 25% of the business checking account as it stood on 10 December 1971, and of the fair market value of Dawnrose on that day, the date when the Gosmans separated. Mr. Gosman appealed to the Court of Special Appeals, contending that the evidence was insufficient to

support a finding of adultery; that even if it were sufficient, the adultery had been condoned; and that there was insufficient evidence to support the chancellor's finding that a partnership existed. Mr. Gosman also challenged the award of alimony and child support, and the allowance of counsel and detectives' fees.

Mrs. Gosman cross-appealed, arguing that once the lower court found that a partnership existed, it was error to award her less than a 50% interest, and that if no partnership existed her interest in the property would be the same as a tenant by the entirety, which would be converted by the a vinculo divorce decree to that of a tenant in common, *see* *McCally v. McCally*, 250 Md. 541, 542, 243 A. 2d 538, 539 (1968).

The Court of Special Appeals in *Gosman v. Gosman*, 19 Md. App. 66, 309 A. 2d 34 (1973), modified the decree, holding that Mr. Gosman was the sole owner of the business, but allowed Mrs. Gosman to retain the sum of $24,000.00 which she had withdrawn from the joint checking account,[1] and affirmed the decree in other respects. This is the posture in which the case reached us when we granted Mrs. Gosman's certiorari petition, so that the only issue before us is that of Mrs. Gosman's interest, if any, in the checking account and the business.

Section 18 of The Uniform Partnership Act, Code (1957, 1970 Repl. Vol.) Art. 73A, § 18, sets out the rules for determining rights and duties of partners. We quote it, in pertinent part:

> "The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:
>
> "(a) Each partner shall be repaid his contributions, whether by way of capital or

---

1. Mrs. Gosman had withdrawn $48,000.00 from the business bank account when she left home. Prior to trial the parties stipulated, without prejudice to the rights of either, that she retain $24,000.00, and return $24,000.00 to Mr. Gosman, *Gosman v. Gosman*, 19 Md. App. 66, 68-69, 309 A. 2d 34, 35-36 (1973).

advances to the partnership property and *share
equally* in the profits and surplus remaining after
all liabilities, including those to partners, are
satisfied . . . ." (Emphasis supplied.)

As a consequence, in the absence of evidence of an
agreement to the contrary — and there was none here —
Mrs. Gosman was an equal partner in Dawnrose with her
husband if, in fact, there was a partnership, as the trial
court was "convinced" existed, *Presutti v. Presutti,* 270 Md.
193, 199-200, 310 A. 2d 791, 794-95 (1973); *Turner's Executor
v. Turner,* 98 Md. 22, 30, 55 A. 1023, 1026 (1903);
*Fleischmann v. Gottschalk,* 70 Md. 523, 529, 17 A. 384 (1889);
*see also United States v. Mancuso,* 378 F. 2d 612, 616,
*modified,* 387 F. 2d 376 (4th Cir. 1967), *cert. denied,* 390 U. S.
955 (1968); *Rosenstock v. Rosenstock,* 151 Md. 253, 262, 134
A. 143, 147 (1926). This rule obtains irrespective of unequal
contributions of capital or services, *Foster v. Wright,* 240
Miss. 566, 576, 127 So. 2d 873, 878 (1961); *Boozer v. Boozer,*
139 Wash. 34, 38, 245 P. 403, 404 (1926); *cf. Paul v. Cullum,*
132 U. S. 539, 550 (1889); *Baker v. Safe Deposit & Trust Co.,*
90 Md. 744, 759, 45 A. 1028, 1031 (1900); *see also* J. Crane &
A. Bromberg, Partnership § 65 (a), at 366 (1968).

Only one question remains: was this finding clearly
erroneous?

What follows is a summary of the testimony in the trial
court. Mr. and Mrs. Gosman were married in 1945 and lived
on Roby Avenue in Beltsville from about 1951. For 12 years
until 1957, Mr. Gosman had a Sealtest Dairy milk route.
Commencing in about 1952, Mrs. Gosman helped to raise "a
couple of thousand" chickens at a time on Roby Avenue, and
brought eggs in from the country. Mrs. Gosman gathered
the eggs, took orders from, and made sales to, customers,
dealt with farmers, answered the telephone, and deposited
the sale proceeds in their joint bank account, which was
subject to the order of either of them.

The business grew, and was moved in 1961 from the
Gosmans' residence to a new location on Baltimore
Boulevard in Beltsville which had been purchased and

improved with funds from the joint bank account and with the proceeds of a loan which both made. Title was held by the Gosmans as tenants by the entirety. The Dawnrose complex on Baltimore Boulevard ultimately became a grocery store, a liquor store, a restaurant, and a night club, which grossed almost $500,000.00 in 1969, close to $600,000.00 in 1970, and over $600,000.00 in 1971, as reflected by the Gosmans' joint income tax returns. Traders' licenses, cigarette licenses, and special retailer's licenses were in the names "Francis H. Gosman & Thelma R. Gosman t/a Dawnrose Farms" until the separation, although the liquor license had been in Mr. Gosman's name alone.

While the nature and extent of Mrs. Gosman's participation changed after the move to Baltimore Boulevard, she described her duties as follows:

> "I have stocked shelves in the grocery store. I have waited tables in the restaurant. I have waited on tables at night in the night club. I have worked behind the bar in the downstairs bar, which is the restaurant. I have worked in the meat room. I have counted money and deposited bank deposits. I have managed the club when my husband was sick or out of town. Besides decorating, I did the interior design and decoration when we were building it, and I also ran the errands whenever he needed something or building supplies, sometimes I'd go get those, building permits and those kind of things."

From the testimony a clear picture emerges: that of an ambitious and industrious young couple, married in 1945 when the husband was 21, and the wife, 18; a wife who continued to work as a clerk-typist, a husband who built a house for himself and his family on a lot purchased from her father. After several years of marriage, when their first child was expected and the wife could no longer keep her job, she commenced to raise chickens at home to supplement the family income; first on a small scale in a tar paper shack, and later on a large scale, selling chickens, eggs, and garden

produce from the house, and supplying customers. During much of this time she worked on weekends, demonstrating appliances. Ultimately, the husband gave up his job as a routeman with Sealtest Dairies, and as his participation in the family business increased, hers decreased. This was followed by the removal of the business from the residence on Roby Avenue to the Baltimore Boulevard complex in 1961, where the character of the business changed into what became essentially the retail sale of groceries, meat, and liquor, and a bar and night club, all of which the husband managed. Although the wife's duties were less onerous, they continued.

There was, of course, no written agreement, and none is required "where the circumstances and acts of the parties indicate an intention to create a partnership," *M. Lit, Inc. v. Berger,* 225 Md. 241, 248, 170 A. 2d 303, 306 (1961); *In re Hare,* 205 F. Supp. 881, 884-85 (D. Md. 1962); *see also Miller v. Salabes,* 225 Md. 53, 55-56, 169 A. 2d 671, 672 (1961); *Vlamis v. De Weese,* 216 Md. 384, 389, 140 A. 2d 665, 668 (1958).

The profits derived from Dawnrose as well as the income from the Gosmans' jointly owned real estate holdings, purchased with funds generated by the business, went into the joint bank account subject to the order of either of the Gosmans. From this account checks could be signed by either of the Gosmans to meet their living expenses, although Mrs. Gosman's bills were usually paid by checks drawn by Mr. Gosman. Section 7 (4) of The Uniform Partnership Act, Code (1957, 1970 Repl. Vol.) Art. 73A, § 7 (4), establishes the rule:

> "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . ."

*See also Miller v. Salabes, supra,* 225 Md. at 56, 169 A. 2d at 672. This may, of course, be rebutted, as Mr. Gosman attempted to do at trial. The chancellor, however, was simply not persuaded by Mr. Gosman's effort.

After hearing the testimony, the chancellor made the following factual finding:

> "It is now the duty of the Court to make a determination of certain property rights which are at issue between the parties. Of primary concern is the right to the business interest in 'Dawnrose.' After considering the testimony of Mrs. Gosman, Mr. Gosman, Mrs. McNeil [the Gosmans' married daughter] and Mr. Russell Gosman [the Gosmans' 25 year-old son], together with other relevant evidence, *the Court is convinced that a partnership between the spouses did exist.*" (Emphasis supplied.)

Under the facts of the case, we see no reason to disturb the finding of the chancellor, who had an opportunity to see the witnesses and judge their credibility. We cannot say that his finding of fact was clearly erroneous, Maryland Rule 886, and there remains only the application of the law to those facts.

Mrs. Gosman should have been awarded 50% of the fair market value of Dawnrose, and 50% of the balance of the checking account at 10 December 1971.

> *That portion of the judgment of Court of Special Appeals which held that Francis H. Gosman was the sole owner of Dawnrose reversed; that portion of the decree of Circuit Court for Prince George's County which awarded Mrs. Gosman 25% of the business checking account and of the fair market value of Dawnrose modified to the end that Mrs. Gosman is awarded a 50% interest in the checking account and in Dawnrose; and the decree as modified, affirmed; costs to be paid by appellee.*