**LEHMAN–GIBSON ASSOCIATES, INC., Appellant,**

v.

**BALTIMORE JOINT VENTURE XVI, Baltimore Joint Venture XXI, Appellees.**

Civ. A. No. 86–0686.

United States District Court, District of Columbia.

Sept. 10, 1986.

Harry C. Storm, Bethesda, Md., for appellant.

Emil Hirsch, Washington, D.C., for appellees.

## OPINION

JUNE L. GREEN, District Judge.

On August 12, 1985, appellees, Baltimore Joint Venture XVI and Baltimore Joint Venture XXI, filed voluntary petitions in the United States Bankruptcy Court for the District of Columbia for relief under Chapter 11 of the Bankruptcy Code. The appellant, Lehman-Gibson Associates, Inc. ("LGA"), a secured creditor of the debtor, filed a motion to dismiss and a motion seeking relief from automatic stay, or in the alternative, for adequate protection as to each of the Chapter 11 cases (the "motions"). The motions asserted, among other things, that the Chapter 11 cases were filed in bad faith, and that the two partnerships had dissolved previously and no longer existed.

The motions were heard by the Honorable George Francis Bason, Jr., on November 21, 1985. At the close of appellant's case-in-chief, the court denied the motions to dismiss the Chapter 11 petitions and the motion for relief from the automatic stay. The court, however, ordered that adequate protection payments of $1,000 per month be paid into escrow.

LGA appeals to this Court to review the denial of its motions pursuant to 28 U.S.C. § 158(a) (1984). For the reasons stated below, the Court affirms the decisions of the Bankruptcy Court.

### I. Background

#### A. The Joint Ventures

Baltimore Joint Venture XVI ("BJV XVI") and Baltimore Joint Venture XXI ("BJV XXI") were formed in June 1980. They are 2 of 29 joint ventures structured between 1972 and 1982 by LGA[1] for the purpose of acquiring and holding Baltimore

---

1. LGA is a partnership between Linda Lehman Gibson and her late husband, Morton A. Gibson.

city residential properties. The participants in the joint ventures were generally sophisticated Washington area investors, who for a cash contribution typically received a 10 percent interest in the venture. BJV XVI and BJV XXI were created pursuant to separate joint venture agreements.

A portion of the venturers' cash contribution was used to acquire the residential properties, with the balance of the purchase price financed through notes payable to LGA. As security for the notes, LGA was granted purchase money mortgages/deeds of trust and/or second mortgages/deeds of trust on the various properties, which were the sole assets of the ventures.

## B. *Jacob Katzow and Francine Weiss*

Jacob Katzow, a psychiatrist, and Francine Weiss, a lawyer, are husband and wife. Both practice and reside in Washington, D.C. Katzow and Weiss participated as venturers in BJV I, II, IV, VI, VIII, X, XII, XVI, XXI, XXIV, XXVI, and XXVII, in the majority of which they owned a 10 percent interest. Transcript ("Tr.") 69. In BJV XVI and BJV XXI, however, they initially purchased 80 percent interests as tenants by the entirety, and later, in April 1983, purchased the remaining 20 percent interests. Thus, they became the sole owners of the properties contained within those ventures, as well as the sole obligors on the notes and deeds of trust on the properties contained therein. Tr. 74, 94. LGA contended that the withdrawal of the other venturers effected a dissolution of the ventures.

After the remaining 20 percent joint venture interests were purchased, BJV XVI and BJV XXI maintained separate bank accounts (Tr. 131); separate records (Tr. 132–133); and each partnership issued its own checks to cover routine expenses, *i.e.,* mortgage payments to LGA (Tr. 131–132), insurance premiums (Tr. 137–138), ground rents (Tr. 138) and real estate taxes (Tr. 138). The appellees, however, failed to file partnership tax returns for the period after May 1, 1983, due apparently to an inadvertent error committed by Katzow/Weiss' accountant. Tr. 48–53. Nevertheless, Judge Bason found that after the 20 percent joint venture interests were purchased, Katzow/Weiss continued to treat the 12 properties titled in the names of BJV XVI and BJV XXI, respectively, as partnership property. Tr. 173–174.

## C. *The Pending Civil Action*

The last acquisitions of residential properties were made by Katzow/Weiss in December 1984. Soon thereafter they made assertions that they had been defrauded by LGA into acquiring the various properties, including the interests in BJV XVI and BJV XXI. As a consequence, they stopped making payments on all of the mortgages in February 1985. Exhibit C to Motion. Katzow and Weiss then filed suit, alleging various state and federal claims, and seeking recission of the transactions, damages, and other relief. Exhibit D to Motion. LGA has denied these claims, defended the suit, and filed counterclaims. Exhibits E, F to Motion.

On June 28, 1985, foreclosure proceedings were instituted on five of the properties contained in BJV XVI and BJV XXI. A sale of one of the BJV XVI properties was scheduled for August 14, 1985.

In response to this action, counsel for Katzow/Weiss considered seeking injunctive relief in the Circuit Court for Baltimore City. This action was never pursued. Instead, on August 12, 1985, BJV XVI and BJV XXI filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Columbia, thereby invoking an automatic stay and preventing the sale of the property. Appellees filed their Plan of Reorganization and Disclosure Statement on March 12, 1986.

LGA argued that appellees filed their Chapter 11 petitions in bad faith in that they sought only to prevent LGA from foreclosing on the properties. Judge Bason ruled that LGA failed to establish a *prima facie* case of bad faith filing on the basis that LGA failed to demonstrate that there was "no possibility of an effective

reorganization and no intention of ever filing a plan of reorganization at the time the petition" was filed. Tr. 174–175.

## II. *Discussion*

"The district court is bound to accept the bankruptcy judge's factual findings unless clearly erroneous. The bankruptcy judge is the trier of fact who sees and hears the witnesses, makes credibility determinations, and resolves conflicts in the proof. The district court, however, must independently determine the correctness of the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *Matter of Hammons*, 614 F.2d 399, 402–03 (5th Cir.1980); *see* Rule 8013, Rules of Bankruptcy Procedure.

Appellant raises two issues in this appeal: (1) whether the Bankruptcy Court erred as a matter of law in finding that BJV XVI and BJV XXI were valid existing partnerships capable of filing bankruptcy; and (2) whether the Bankruptcy Court erred as a matter of law in finding that appellant did not establish a *prima facie* case of bad faith filing. Applying the appropriate standard of review, the Court resolves these questions in the negative.

■ The Bankruptcy Court's finding that BVJ XVI and BJV XXI were, indeed, valid partnerships is supported by ample documentary and testimonial evidence. *See generally Madison National Bank v. Newrath*, 261 Md. 321, 275 A.2d 495 (1971) (a joint venture is really in law a partnership). Appellant's challenge is based upon a myopic interpretation of partnership law. While it is generally true that a partner's sale or assignment of his interest to other partners "operates as a dissolution of the partnership where it is clear that the parties contemplated and intended the entire withdrawal from the partnership of such partner and the termination of the partnership between themselves," 60 Am.Jur.2d *Partnerships* § 179, the inquiry does not end there. It is well established in partnership law that "[w]hether or not a partnership exists, where there is no express agreement, is to be gathered from the intention of the parties revealed by their conduct and the circumstances surrounding their relationship and the transactions between them." *Vlamis v. DeWeese*, 216 Md. 384, 389, 140 A.2d 665, 668 (1958) (citations omitted); *accord In Re Hare*, 205 F.Supp. 881, 884–85 (D.Md.1962); *see also Gosman v. Gosman*, 271 Md. 514, 318 A.2d 821 (1973), *rev'd in part and aff'd in part* 19 Md.App. 66, 309 A.2d 34 (1974) (under Maryland law a written agreement is not necessary in order to create a partnership).

The Bankruptcy Court weighed the testimony that Katzow/Weiss intended to continue the separate partnerships after the withdrawal of the other BJV XVI and BJV XXI partners and evidence that separate partnership records and bank accounts were maintained. Further, Judge Bason, having observed the demeanor of Dr. Katzow and Jerome Lewis, the accountant for the general partners, found credible the explanation as to the failure to file partnership tax returns. Judge Bason's finding that the properties which are the subject of these two Chapter 11 cases were owned by two separate partnerships on the date the Chapter 11 petitions were filed is supported by substantial evidence. *See In Re Hare*, 205 F.Supp. at 884–85; *see also* Md. Corps. & Ass'ns. Code Ann. § 9–612(a).

Secondly, appellant challenges the Bankruptcy Court's ruling that it failed to establish a *prima facie* case of bad faith filing on the basis that LGA did not demonstrate that "there was no possibility of effective reorganization," and that the debtor "had no intention of ever filing a plan of reorganization." Tr. 174–175. A review of the proceedings in the Bankruptcy Court reveals that appellant offered the following factors as demonstrative of debtors' bad faith in filing their Chapter 11 petitions: filing on the eve of foreclosure; noting a separate and contemporary legal dispute between Katzow/Weiss and LGA, including its principals; the alleged financial health of appellees; the alleged nonexistence of an ongoing business; and the

alleged improbability of effective reorganization.

The heavy burden of showing bad faith rests with the moving party. *In Re Colony Square Co.*, 22 B.R. 92 (Bkrtcy., E.D.Pa.1982); *see also Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986) (determining debtor's good faith in filing Chapter 11 petition depends upon Bankruptcy Court's on-the-spot evaluation). The factors presented by the appellant, standing alone or in combination, do not give rise to reversible error. *See, e.g., In re Landmark Capital Corp.*, 27 B.R. 273 (Bkrtcy, D.Ariz.1983) (filing on the eve of foreclosure does not establish *prima facie* case of bad faith, nor does the existence of litigation between debtor and its principal secured creditor in a non-bankruptcy forum); *Matter of Williams*, 15 B.R. 655, 657 (E.D.Mo.1981) (ability of debtor to repay his debts not adequate grounds for dismissal). Further, sufficient evidence was presented to indicate that BJV XVI and BJV XXI are ongoing businesses, where there exist 12 rental properties, rents are collected, bills are paid, and the properties are being managed. Finally, in weighing the probability of success of a reorganization, "a court must be careful to avoid premature rejection of the possibility of a plan," at the early stage when a request for bad faith dismissal is made. *In re Lela & Co., Inc.*, 551 F.2d 399, 409 (D.C.Cir. 1977); *accord Matter of Levinsky*, 23 B.R. 210, 219 (Bkrtcy, E.D.N.Y.1982); *see generally Matter of Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985) (factors relevant to determining whether a Chapter 11 petition has been filed in good faith).

### III. *Conclusion*

The Bankruptcy Judge's findings were sound and his legal conclusions were well founded. *See Matter of Hammons*, 614 F.2d at 402–03. Accordingly, the Court affirms the Bankruptcy Court's denial of appellant's motion to dismiss the petition. An order is attached.