HAMILTON BROS. CO. *v.* NARCIESE.

(Division A.   January 7, 1935.)

[158 So. 467.   No. 31316.]

Heiss & Heiss, of Gulfport, and **W. L. Guice**, of Biloxi, for appellant.

**R. A. Wallace**, of Gulfport, for appellee.

Argued orally by **J. L. Heiss** and **W. L. Guice,** for appellant, and by **R. A. Wallace,** for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from the judgment of the circuit court of Harrison county awarding the appellee, Peter B. Narciese, a recovery for personal injuries alleged to have been sustained as a result of the negligence of the appellant, Hamilton Bros. Company.

The facts shown by the record are substantially as follows: The appellee was employed by the appellant company, which was engaged in the application of sheet felt and asphalt to the surface of the roof of the Gulfport Compress building, in the city of Gulfport. This

work was being done under the direct supervision of one of appellant's vice presidents, N. A. Rice, who personally directed and supervised the ways, means, and methods of prosecuting the work and the labors of the workmen engaged therein. The building which was being roofed was about four hundred feet long, and the roof covering it was almost flat. Along the side of the building, there was a shed or porch, the roof of which, where it joined the main building, was about three feet lower than the roof of the building itself. This porch or shed was about ten or twelve feet wide, and its roof sloped one inch to the foot from the point where it joined the main building to the outer edge or eaves thereof. At the time the appellee was injured, the sheet felt had been applied to the roof of the main building and to the porch roof, and the employees of appellant were spreading molten asphalt on the roof of the main building. For the prosecution of this work they were using a large kettle, equipped with a heating furnace, which was located on the ground near the porch, in which the raw asphalt was boiled preparatory to the application thereof to the roof. For the purpose of raising the molten asphalt, in buckets, to the surface of the porch roof, there was attached to the edge of the roof a derrick which was equipped with a pulley and a rope with a hook attached to one end. Sheet iron buckets of about five-gallon capacity were being used to convey the molten asphalt from the kettle in which it was boiling to the points on the roof where it was applied.

Two laborers, stationed on the ground, were engaged in boiling the asphalt, filling the buckets, and elevating them to the porch roof by means of the derrick. The appellee was stationed on the porch roof, and his duties were to receive these buckets of molten asphalt and convey them to the main roof. The buckets were sent up one at a time, and the appellee was required to remove

the bucket from the hook and then send down an empty bucket. When he had received two buckets, he was then required to carry them to the main roof and set them thereon, and return to the derrick with two empty buckets. At the time of appellee's injury, no asphalt had been applied to the porch roof and it was being used as a place for appellee to stand and walk upon in the discharge of his duties.

The appellee was injured during the afternoon of Monday, January 9, 1933. The equipment with which the work was being carried on had been set up at the place of the injury on the preceding Friday, and the work was carried on during that day, and probably Saturday; but on account of rain no work was done on the following Monday morning. When the buckets of molten asphalt were set down on the sloping porch roof, and as they were being carried across this roof to the main roof, some of the asphalt spilled on the porch roof and gradually accumulated at and around the place where the appellee was working. This accumulation of asphalt on the porch roof was charged to be, and appellee testified that it was, the result of the negligent and unnecessary filling of buckets to the brim, thereby causing them to overflow when placed on the sloping roof. The appellee further testified that, when this accumulation of asphalt cooled, it became hard, and that it was in that condition when he resumed work on Monday afternoon; but that on account of setting the hot buckets of asphalt thereon and the spilling of other hot asphalt on it, caused by the negligent manner in which the appellant required the buckets to be filled, the entire mass or accumulation of asphalt on the porch became a sticky and adhesive mass; that, as he was carrying two buckets of the molten asphalt to the main roof, one bucket in each hand, he stepped into this adhesive accumulation, and one of his feet was thereby bound to the roof, and he was thereby caused to fall; and that as a result of this fall the con-

tents of the two buckets were thrown onto and over his head, face, and body. As a result of this hot mass being thrown on his body, the appellee was seriously burned and permanently injured.

It was charged that the appellant was negligent in permitting and requiring the buckets to be filled so that asphalt would overflow and spill on the roof when they were placed on the sloping roof, and when they were being moved by appellee, and in unnecessarily permitting the accumulation on the surface of the roof where the appellee was required to work.

To the declaration filed herein, the defendant company filed a plea of the general issue and gave notice thereunder of an accord and satisfaction to be claimed by it, by reason of a written release, dated February 13, 1933, whereby the appellee gave a full and complete release in favor of appellant for any and all damages suffered by him by reason of the facts set forth in the declaration, which release was also signed by appellee's wife, and was executed in the presence of four parties whose names were signed thereto as witnesses, and acknowledged before the circuit clerk of Harrison county. To this notice the appellee filed a reply setting forth, at length and in detail, representations made to the appellee's wife by an officer and the attorney of appellant, and denying that he knowingly executed the release in question, and averring that at the time the purported release was executed, and for a long time thereafter, he was totally blind, almost deaf, and totally incapacitated physically, and was so mentally deranged from pain and suffering as to be wholly incapable of understanding or comprehending any business transaction, or the nature and purpose thereof; that all negotiations for a compromise and settlement, if any, by the appellant were had with appellee's wife; that he had no knowledge whatever of any alleged settlement or compromise until long

after the date of the execution of the purported release, for the reason that, at the time of its execution, he was wholly without mental capacity to understand and comprehend the alleged compromise and settlement and the written release of either of them, or any part thereof, or the nature and purpose thereof; and that this fact was well known to the appellant at the time the purported release was signed.

The appellant has assigned as error the refusal of the court below to grant a peremptory instruction requested by it. We do not think that the contention of the appellant that there was no liability for the reason that the work was a part of construction which was of a changing or shifting nature is maintainable. The work at the points where the asphalt was being applied to the main roof may have been of a shifting or changing character, but such was not the case where the appellee was required to work. The derrick had been attached to the porch roof at that point, and the appellee had been receiving buckets of asphalt there, at least since Friday morning before he was injured. It is true that no work was carried on during a part of the time the derrick was so placed, but, under the circumstances, the appellee's work and his place of work was not of a changing or shifting nature. It was the appellant's duty to receive the buckets of asphalt as filled, and deliver them to the place designated. It was no part of his duty to keep the place where he was working in a reasonably safe condition, free from the accumulation of this adhesive mass, but that was the continuing duty of the master. Finkbine Lumber Co. v. Cunningham, 101 Miss. 292, 57 So. 916. In the discharge of its duty to provide a reasonably safe place for the appellee to work, and to maintain the place in a reasonbly safe condition, the appellant was required to guard against, or take measures to prevent, injuries which a reasonably prudent person,

under the circumstances, could have foreseen or anticipated as reasonably probable or likely to happen to some one.

Upon the facts in evidence, we think it was for the jury to say whether, as a reasonably prudent person, the officer of the appellant who was exercising direct supervision and control over the appellee and the place where he was required to work should have reasonably anticipated or foreseen that some injury would result on account of the spilling of asphalt from the buckets onto the surface of the roof at or near the place where the appellee was required to work.

Upon the question as to the validity of the release executed by the appellee on February 13th, after his injury on January 9th, the evidence is lengthy. When the appellee was injured, the appellant immediately carried him to a hospital, where he was confined under the treatment of a physician for about twenty-seven days. He was then removed to his home, where he was confined, in a serious condition, for considerably more than a month thereafter. He testified that on account of his burned condition, and the violent pain and suffering endured by him during that period, he was totally blind, almost deaf, and was unable to speak distinctly and talk coherently; that he did not knowingly compromise and settle his claim for damages against the appellant; that he did not consciously execute a release, and did not authorize anyone else to do so for him; that he had no recollection whatever of events transpiring between the time he was injured and some time in April thereafter; that he had no knowledge or recollection of the compromise or settlement, or the execution of a release; that he did not receive any money in settlement of his claim for damages, and that, until long after the execution of the release, he was wholly incapacitated mentally to understand and comprehend the alleged settlement and

release, or the nature or purpose thereof; that as soon as he regained his mental faculties sufficiently to transact. any business he employed counsel to press his claim for damages, and then for the first time learned of the purported release; and that he then immediately repudiated it.

As to his physical and mental condition from the time of his injury until long after the release was executed, he was corroborated by his wife and several other witnesses who saw him daily during that time, and, in some measure, by certain witnesses for the appellant. The appellant offered evidence tending to show that, at the time the appellee executed the release, he was mentally capable of fully understanding and comprehending the terms of the release and the nature and purpose thereof, and that, in fact, he did understand and fully comprehend it.

Upon this conflicting evidence, the jury found that the purported release was invalid; and we think it was fully warranted in so finding. The appellant, however, assigns as error an instruction granted the appellee on the quantum of proof required to establish mental incapacity to contract, or execute a valid and binding release. This instruction authorized the jury to disregard the alleged settlement and release, if they believed from a preponderance of evidence that the appellant obtained it at a time when the appellee was overcome by physical pain and mental anguish from the effects of the injury sustained by him, and when he was mentally incapable of understanding, or comprehending, or appreciating, the meaning, nature, and purpose of such instrument. The appellant contends that the appellee's attack on the validity of the release, as set forth in his replication or counter notice, is based upon alleged fraud of the agents and attorneys of appellant in procuring the release, and that to establish fraud more than a preponderance of

proof is required, and it can only be established by evidence which is clear, convincing, and indubitable.

While it is alleged in the counter notice that the agents of the appellant knew of the appellee's mental incapacity to contract at the time they obtained the release, the gravamen of the notice, and the basis upon which it was sought throughout to avoid the release, was the temporary insanity of the appellee or his mental incapacity to contract or to comprehend the nature and purpose of the release or his act in signing it. The law presumes the fact of sanity and mental capacity to contract, and the burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity of the maker thereof to establish it by a preponderance of proof; but it is not true, where the issue is purely a civil one, that it is necessary that it should be established by proof which is clear, convincing, and indubitable. King v. Rowan, 82 Miss. 1, 34 So. 325; Washam v. Beaty, 210 Ala. 635, 99 So. 163; Green v. Phoenix Mutual Life Ins. Co., 134 Ill. 310, 25 N. E. 583, 10 L. R. A. 576; 14 R. C. L. 622; 32 C. J., pp. 786, 787, secs. 640 and 642.

The appellant procured two instructions which informed the jury that the burden was on the appellee to prove by clear and convincing evidence that he did not knowingly sign and execute the release in question, for the reason that he was mentally incapacitated at the time to comprehend the nature and purpose of the release. This was all and more than the appellant was entitled to, and, in so far as the instructions bearing on the burden of proof and the measure and sufficiency thereof are concerned, no error prejudicial to the appellant was committed.

The appellant also contends that an instruction numbered five in the record is erroneous, for the reason that it informed the jury that a valid contract could be exe-

cuted only by parties who were mentally capable of understanding, comprehending, and appreciating the meaning, nature, and purpose of every term and provision thereof. The language of the instruction is not "every term and provision thereof," but "every material term and provision thereof," and we do not think it susceptible of the criticism made of it.

The cause was submitted to the jury under instructions which fairly presented the issues involved, and we find no reversible errors therein. The judgment of the court will therefore be affirmed.

Affirmed.