CITY OF MERIDIAN *v.* AKIN.

(Division A.   Nov. 2, 1942.   Suggestion of Error Overruled Dec. 14, 1942.)

[10 So. (2d) 194.   No. 35037.]

Robert R. Wallace and Jacobson, Snow & Covington, all of Meridian, for appellant.

M. V. B. Miller and L. J. Broadway, both of Meridian, for appellee.

Argued orally by **E. L. Snow**, for appellant, and by **M. V. B. Miller**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a judgment in favor of the appellee, Mrs. Evie Akin, for damages sustained when she stepped into a hole and fell down on the sidewalk in the business section of the City of Meridian on the 28th day of March, 1936, causing a serious and permanent injury to her knee.

Among other errors assigned on appeal, the appellant contends (1) that it was entitled to a peremptory instruction in its favor on the ground that the proof did not disclose a failure on the part of the municipality to exercise ordinary care to maintain the sidewalk in a reasonably safe condition for the use of persons exercising proper care and caution for their own safety; (2) because the proof disclosed that the appellee, together with her husband, B. H. Akin, on April 20, 1936, for a valuable consideration, executed a full, complete, and final release to the City of Meridian of all claims, causes of action, damages, rights or interest, held by either of them on account of the said injury.

We are unable to determine from the evidence the exact nature, character, and extent of the alleged defective and dangerous condition in the sidewalk complained of, but the plaintiff's proof seems to disclose that the sidewalk was approximately twelve feet in width and that nearer to the street than the center of the walk there were two adjacent blocks, approximately four feet square, which had become pressed down lower than the remaining blocks in such manner as to form a hole approximately four inches deep and of sufficient size for the plaintiff to step into it and cause her to fall. She had driven several miles from her home, which was located out in the country, and she testified that she was not familiar with the condition of the sidewalk prior to the accident; but it was shown that others, whose places of business were located in that

particular area of the business section of the city, and who had good reason to be familiar with the situation, had previously stumbled and fallen at the place in question, and that the city authorities had been duly notified of both the alleged defective and dangerous condition of the pavement and of the fact that pedestrians were stumbling and falling there, and had been requested several days prior to the accident, and on two or more former occasions, to remedy the condition complained thereof. This testimony was competent to show whether the defect complained of was inconsequential, or such as to cause the city to reasonably anticipate that some injury would probably result therefrom, and was competent to prove notice to the city as a basis for the plaintiff's claim that there had been a negligent failure to discharge the duty of maintaining the sidewalk in a reasonably safe condition for the use of those exercising ordinary care. We do not think that the cases of Mississippi Central Railroad Co. v. Miller, 40 Miss. 45, 47, and Tribette v. Illinois C. R. Co., 71 Miss. 212, 13 So. 899, cited by the appellant in support of its objection to this testimony, are in point here.

In our opinion, the proof, as contained in the record now before us, was sufficient to go to the jury on the question as to whether the defect was of such character as to make the sidewalk unsafe for use by persons exercising proper care for their own safety and also as to whether the city ought reasonably to have anticipated that some injury would probably result therefrom to a person so using the sidewalk in the accustomed manner; and that, therefore, the city was not entitled to the requested peremptory instruction on the question of liability under the principles announced in the cases of City of Meridian v. Crook, 109 Miss. 700, 69 So. 182, L. R. A. 1916A, 482; City of Greenville v. Laury, 172 Miss. 118, 159 So. 121; and Birdsong v. City of Clarksdale, 191 Miss. 532, 3 So. (2d) 827.

Immediately following the appellee's injury, she was carried to a local hospital where she remained for treatment at least a week and was then sent to her home, on account of the alleged crowded condition of the hospital, and she was then confined to her bed at home most of the time for approximately three months. It was shown, however, that during this period of time and thereafter she was carried back to the local hospital once or twice a week for treatment, and on some of which occasions it was necessary to insert a sharp instrument into the injured knee to afford relief from pain. Also, it was shown that she suffered considerably during all of this confinement at her home, and continued to do so, even at the time of the trial, some three or four years after she had sustained the fall.

It appears that on the date of the execution of the release in question, which occurred on the occasion of one of the visits of the appellee to the hospital, twenty-three days after the accident, she accompanied her husband, B. H. Akin, in an automobile to the municipal building of the appellant, where he negotiated with the city authorities for a settlement of the damages claimed on account of the injury, and with the result that the contract of release and settlement was prepared and delivered to him for their joint execution. It was then suggested to Mr. Akin that he and the plaintiff should go before the circuit or chancery clerk to sign and acknowledge the same; and the plaintiff was pointed out to the said officials by him while she sat in the car in front of the municipal building, awaiting the negotiations for the settlement, and about thirty minutes thereafter they both returned with the release duly executed and acknowledged before the chancery clerk, whose official seal was affixed thereto. She again waited in the car while Mr. Akin went into the municipal building to deliver the release and obtain a voucher from the city officials for the sum of $50 as damages and $3 to cover

the cost of certain medicine at the drug store. It was shown that both the release and the voucher bore the plaintiff's signature and endorsement, respectively, and that the voucher was deposited to the joint account of the plaintiff and her husband on that same day, less the sum of three dollars paid to him in cash at the bank. The plaintiff admitted that the said signature and endorsement looked a great deal like her handwriting, and she declined to deny that they were genuine, but testified, in substance, that, although she knew nothing of having gone to the municipal building on that or any other occasion, and expressly denied having appeared before the chancery clerk, nevertheless, if she did sign the release and endorse the voucher, she did not know that she was signing a release of her claim; that she was suffering so much pain and agony during the period of time when the release purports to have been executed that she did not know half that she was doing. Both Mr. Akin and the chancery clerk had died prior to the trial.

Under all the facts and circumstances disclosed by the record, we are of the opinion that the city met the burden of proof in showing the execution of the release by the plaintiff in so far as her signature thereto is concerned, and the appellant was entitled to a peremptory instruction on that particular issue. As to whether the appellee met the burden of proof of then showing her mental incapacity to execute a valid release on that day, on the ground that she was so overcome with physical pain and suffering that she did not realize or comprehend what she was doing, we are of the opinion that the verdict of the jury in her favor is against the overwhelming weight of the evidence on that issue, and that the case should be reversed and remanded for a new trial.

The physician who treated the plaintiff at the local hospital was unable, because of illness, to attend the

trial of the case, and it appears that this fact was not known to the plaintiff at the time she announced ready for trial, but that she confidently relied upon his assurances that he would be able to attend as a witness when needed. The result was that no physician testified that this injury to her knee was of such nature and character as would have rendered her mentally incapable of executing a valid release at that particular time. Her own testimony in that behalf is somewhat inconsistent with the admitted fact that she was physically able to accompany her husband in the automobile from her home for a distance of several miles to the municipal building, wait in the automobile pending negotiations for the settlement, leave the building and remain away for nearly half an hour before returning for her husband to deliver the release to the city authorities, and then wait for the issuance of the voucher and its subsequent deposit at the bank on the occasion in question. Her contention that she was mentally incapacitated on that particular day— a day that she does not recall at all—is predicated upon her general condition during that month, and her proof in support of this issue of mental incapacity is so unsatisfactory as to require that we hold the verdict of the jury to be contrary to the overwhelming weight of the evidence and to warrant the granting of a new trial.

One physician testified that, in his opinion, she was not suffering from the injury at the time of the execution of the release to such an extent that she could not have understood and appreciated what she was doing, but the testimony shows that the jury would have been warranted in finding that this physician was not treating her at that time, and no hypothetical questions involving the proven facts as to the then condition of her injury were either submitted to him, or to any of the other physicians who testified in this case, to obtain an opinion as to her mental capacity to execute a valid release.

There is neither allegation nor proof that anyone

representing the appellant misled or deceived the appellee in connection with the execution of the release, nor that any one representing the appellant ever talked to her in regard thereto. Then, too, in the absence of any proof to the contrary, we must assume that her husband neither misled her about the transaction nor induced her not to read the instrument that she signed. Neither do we have a case where it is claimed that the release should be held inoperative because she had sustained some injury not known to her at the time of the execution of the instrument in question.

In support of the verdict of the jury on this issue, the appellee relies strongly on the case of Hamilton Bros. Co. v. Narciese, 172 Miss. 24, 158 So. 467, where the court held that the evidence presented an issue for the jury as to whether the plaintiff was so overcome by physical pain and mental anguish at the time of the execution of the release there involved as to render it invalid; but in that case the plaintiff had been so badly burned with molten asphalt as to render him blind, deaf, and unable to talk coherently—an injury much more aggravated than shown in the case at bar, and consequently that case is not necessarily controlling here.

The other alleged errors complained of will not likely recur upon another trial of the case.

Reversed and remanded.