FOSTER *v.* WRIGHT

No. 41738 March 20, 1961 127 So. 2d 873

*Alton Massey*, Kosciusko, for appellant.

*E. B. Todd*, Kosciusko, for appellee.

Rodgers, J.

The appellee, Benny D. Wright, filed his bill in the Chancery Court of Hinds County against the appellant, Emily Foster, in which he alleged that the appellee and appellant were partners in a certain business known as the "Pronto Pup". The complainant alleged that Benny D. Wright and Emily Foster entered into an oral agreement of partnership sometime in the month of June 1955 and that their partnership continued until June 5, 1959. The complainant alleged that sometime near the 12th day of March 1956 the appellant and appellee signed a written agreement, a copy of which is attached to the original bill as Exhibit A, and in which is acknowledged "that

each of said parties own an undivided one-half interest in said business, the fixtures, equipment and accessories now in said place of business; that they have operated said business for sometime heretofore without formal written agreement.''

The bill alleged that the partners had accumulated a savings account in the First Federal Savings and Loan Association, and two certificates of investment. The bill alleged that Emily Foster had used $1,200 out of the profits of the business to purchase certain real estate and that she had $1,000 in her possession belonging to the partnership.

The appellant, Mrs. Emily Foster, answered the original bill and denied the partnership, and denied that Benny D. Wright had any interest whatsoever in Pronto Pup or in the profits from said business, and denied that the funds, and certificates mentioned in the bill were accumulated by the partnership. She also denied that the appellee had a right to a dissolution of an alleged partnership or that he had any interest whatsoever in the personal property described in the bill. The defendant, appellant here, made her answer a cross bill, in which she alleged that she was the sole owner of the Pronto Pup. The appellant's cross bill alleged that the appellee inveigled her into putting money in the bank in a joint account because she was in love with appellee and she was living with him in an illegal and immoral social relationship. The cross-complainant, appellant here, further alleged that she became ill around the first of March 1956 and that she was carried to the Baptist Hospital and later transferred to the State Hospital at Whitfield where she remained until June 1956. She alleges that during all of the time she was in the hospital she was non compos mentis and was unable to make a contract, and she alleged that the writing, admittedly signed by her, was written at a time when she was not capable of making a contract. The appellee answered

the cross bill and denied that the said writing was signed at a time when the appellant was non compos mentis; and alleged that because of the appellee's excessive drinking the business was "about to go on the rocks, in June 1955", and that the business was built up and the profits saved while he was a partner. Finally, the appellee was forced to withdraw from the business because of the defendant's excessive drinking.

The case was tried by the chancellor. The complainant introduced nine witnesses, including the defendant as an adverse witness. The defendant and cross-complainant introduced twelve witnesses. At the close of the testimony, the chancellor entered an order holding that Benny D. Wright and Emily Foster were partners in the business known as Pronto Pup and that these parties operated this business from June 1955 to June 5, 1959, during which time they accumulated the personal property set out in the bill of complaint. The chancellor divided this property equally and established a lien on the deposits in the First Federal Savings & Loan Association of certain funds held by the appellant.

The testimony in this case for the appellee can be said to reasonably show that there was a partnership between the parties, and that the complainant Benny D. Wright worked in the place of business and the personal property accumulated on deposit in the bank and the savings account was accumulated largely because of his efforts. The testimony for the appellee further shows that the appellant admitted on several occasions that the appellee Benny D. Wright was a partner in this business. She admits having signed a writing stating that Bennie D. Wright and Emily Foster were partners, and "that they have operated said business for sometime heretofore without formal written agreement."

The appellant's testimony was to the effect that Emily Foster was in love with Benny D. Wright, a married man, and that this affection developed into an allicit relation-

ship. Appellant testified that she trusted Benny D. Wright and put her money in the bank in a joint account with him. She admitted he worked at the place of business but that his work was done as a favor to her, and while she was in the hospital he managed this place of business for her, but not as a partner. She offered the testimony of her doctors to the effect that she was mentally incapable of signing a written contract during the time she was in the hospital, but this testimony also shows that she was sane before she went to the hospital and recovered her mental equilibrium so that she was discharged from the hospital. There is testimony that the alleged writing was signed at the hospital, but there is also testimony to indicate that the appellant signed the writing at a time when she was not in the hospital. The testimony also shows that when she recovered her mental health, the appellant gave her a copy of the writing which she kept and that these parties continued to do business from 1956 until June 5, 1959, and during this time the appellant made no objection to the claim of Benny D. Wright that he was a partner in the business.

The appellant argues that the court below committed error in not placing consideration upon the facts developed in this case from the standpoint of morals. In order, however, for the question of morals to be of probative value, the evidence must reach such a degree as to show deceit and fraud growing out of an illicit relationship, and the proof must be clear, convincing and satisfactory. Parker v. Laubenheim, 215 Miss. 373, 60 So. 2d 815; Tuteur v. Chase & Company, infra; In Re Jones' Will, 85 N. Y. S. 294.

The burden of proof is upon the party charging or alleging fraud. 24 Am. Jur., Fraud and Deceit, Secs. 255, 257. Smith on the Law of Fraud, Sec. 264, p. 287; Sec. 267, p. 290.

 It is a well-settled doctrine that in all cases the presumption of evidence is in favor of honesty. The law never presumes a wrong—malum non praesumitur. In Tuteur v. Chase & Company, 66 Miss. 476, 6 So. 241, it is stated: "Fraud is not presumed, but it must be distinctly and satisfactorily proved, either directly, or by facts or circumstances from which it may reasonably be inferred." McGehee v. McGehee, 227 Miss. 170, 85 So. 2d 799; 24 Am. Jur., Fraud and Deceit, Sec. 256, p. 88.

There is also another presumption that arises to aid the presumption of honesty, and that is: "It is an axiom of the law, which is applied to a wide variety of situations, 'that every sane man is presumed to intend the ordinary, natural, probable, or necessary consequence of his voluntary, intentional, and deliberate act.' As expressed in other language, persons of sound mind and discretion must in general be understood to intend, in the ordinary transactions of life, that which is the necessary and unavoidable consequences of their acts." 20 Am. Jur., Evidence, Sec. 232, p. 227. The theory of the appellant that she was unduly influenced by her "boy friend" must have been established by the requisite quantum of proof. 24 Am. Jur., Fraud and Deceit, Sec. 262, p. 95.

The general law is set out in 20 Am. Jur., Evidence, Sec. 230, p. 225, as follows: "The law does not presume that one person has exercised duress or undue influence upon another, when no trust relationship exists between the parties. In such cases the undue influence or duress must be proved by the party who asserts a claim or defense based thereupon. There is, it has been said, an evidentiary presumption in favor of a person charged with duress and undue influence, the same as in all cases sounding in fraud, that he did not perpetrate the wrong. The mere fact of power, notice, and opportunity to exercise undue influence does not authorize the inference that such influence was exercised."

The testimony in this case does not satisfy the requirement necessary to charge the appellee with fraud or undue influence on the ground of "morals" or fiduciary relationship, solely because of the social arrangement said to exist between appellant and appellee. The chancellor was therefore correct in ignoring the social arrangement between the parties.

The appellant argues that the chancellor committed error in holding that the appellant knew what she was doing when she signed the writing acknowledging the partnership, and points out the testimony of Dr. F. A. Donaldson, who testified that at the time he saw the appellant she met all the requirements of non compos mentis. It is said that the appellant entered the hospital on March 3, 1956, and was transferred to Whitfield on March 23, 1956. There is testimony that the written acknowledgment of the partnership was signed at the hospital during the time appellant was being treated by Dr. Donaldson. The acknowledgment of the justice of the peace is dated March 12, 1956. On the other hand, there is testimony that the writing was signed before the appellant went to the hospital at the place of business. Moreover, the doctor testified that appellant was depressed over the loss of "her boy friend", and that she was drinking excessively. The doctor stated that part of the time she knew what she was doing, and that "One thing about manic, when she gets over it she gets over it." The doctor answered in the affirmative the question "When she gets over it, she gets over it like she gets over measles?"

In the case of Hamilton Brothers Company v. Narciese, 172 Miss. 24, 158 So. 467, the Court said: "The law presumes the fact of sanity and mental capacity to contract, and the burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity of the maker thereof to establish it by a preponderance of proof * * *"

The testimony on the question of the insanity of the appellant at the time she signed the writing acknowledging the partnership is in conflict, (1) as to the time when and the place where it was signed, and (2) possible lucid interval at hospital.

The chancellor accepted the testimony that indicated sanity of the appellant, but held that even if she were insane at the date she signed the acknowledgment of partnership, she was given a copy of the writing as soon as she came out of the hospital in June 1956, and it was her duty to promptly repudiate the acknowledgment of partnership.

In the case of Whittington v. H. T. Cottam Company, 158 Miss. 847, 130 So. 746, the Court said: "If a party defrauded desires to disaffirm a contract procured by fraud, he must do so with reasonable dispatch after discovery of the fraud. * * * He may affirm or disaffirm the contract, but he cannot do both. If he has full opportunity to learn all the facts and the law applicable thereto, and fails, within a reasonable time, to rescind the contract, he is bound by it."

We cannot therefore say that the chancellor was in error in holding that the acknowledgment of a partnership was written at a time when the appellant was sane, and further that she should have repudiated her acknowledgment after she came out of the hospital if she desired to deny the partnership. Moreover, the written acknowledgment of partnership is a minor part of the testimony introduced by the appellee to prove partnership.

Finally, the appellant argues that the relationship between the parties was not a joint business venture, and that the chancellor was in error in holding that "it was a joint venture."

It is difficult to determine in many cases whether a business transaction is a single joint venture or a continued business partnership arrangement. The textbooks

are full of definitions, and we call attention to 30 Am. Jur., Joint Adventures, Sec. 4, p. 940, as follows:

"Admittedly, it is difficult to distinguish between joint adventures and partnerships. The relations of the parties to a joint adventure and the nature of their association are so similar and closely akin to a partnership that it is ordinarily held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to, and substantially the same, if not exactly the same, as those which govern partnerships. From the standpoint of the element of mutual agency of the members of a joint adventure, the relationship has often been said to be akin to that of partnership or of partnership for a single transaction. In general, however, it is now understood that the two relationships are not identical, and that decisions defining and describing partnerships are not necessarily controlling upon the question whether parties to a particular contract are joint adventurers. In other words, it is not necessary, in order that there be a joint adventure, that a legal partnership exist.

"There may be a partnership for a single transaction, but ordinarily a partnership is formed for the transaction of a general business of a particular kind; while a joint adventure is entered into to perform a single transaction of a particular kind, although it may take a number of years. Because of the limited scope of the relationship between joint adventures, it is generally more informal than the relationship between partners, and some of the incidents of partnership do not, or at least may not, attach thereto."

In the case of Sample v. Romine, 193 Miss. 706, 8 So. 2d 257, it is said: "While perhaps no exact definition of a joint adventure can be given, nor can a general rule be laid down by which the question as to what amounts to a joint adventure can be answered, the answer in each case depending on the terms of the agreement, the acts

of the parties, the nature of the undertaking and other facts (30 Am. Jur. page 680, Sec. 7 * * *

"A contract between the parties is necessary, but it need not be express or embodied in a formal agreement. It may be inferred from the facts, the conduct of the parties and the circumstances. Cooperstein v. Shapiro, 122 N. J. Eq. 238, 192 A. 826; Wyoming-Indiana Oil & Gas Co. v. Weston, 43 Wyo. 526, 7 P. 2d 206, 80 A. L. R. 1037; Annotations 48 A. L. R. 1058, 63 A. L. R. 910."

The question in this case is whether or not these parties were partners in the business known as Pronto Pup, and as such entitled to share the profits from the business, and in answering this question we are not confined to a determination of whether or not it was a joint venture or a full partnership.

There are many guides that may be useful as aids in determining whether or not an oral agreement is a contract of partnership. In the beginning there must have been an agreement to form a partnership. 40 Am. Jur., Partnership, Sec. 16, p. 136.

Sharing of profits among principals in the business (40 Am. Jur., Partnership, Sec. 34, p. 148), creates a presumption of partnership. 40 Am. Jur., Partnership, Sec. 38, p. 151. The right to manage the business is a factor useful in determining whether or not an arrangement between the parties is a contract of partnership. 40 Am. Jur., Partnership, Sec. 51, p. 165. The conduct of the parties with reference to the business is evidence as to whether or not there is a partnership. 40 Am. Jur., Partnership, Sec. 53, p. 166.

The testimony before the chancellor was sufficient to show that Bennie D. Wright worked at Pronto Pup under some sort of an arrangement between the parties, and that he was so active in the business as to create the impression in the minds of the customers that he was an owner. The appellant told several people that he was her partner. They put the profits in the bank in

joint accounts. Mrs. Emily Foster signed an acknowledgment in writing stating that Mr. Wright was her partner, and although she claims that she was insane when she signed the acknowledgment, she kept it in her possession without refuting or repudiating his claim that he was her partner.

It is said by the appellant that there is no testimony in the record on which the chancellor can base his equal division of the personal property except the testimony of the appellee, but we hold that the chancellor was aided by the presumption of law, that partners share the profits equally. In 40 Am. Jur., Partnership, Sec. 350, p. 375, it is said: "Inasmuch as the shares of partners in the partnership are presumed to be equal, in the absence of any stipulations or other evidence from which an agreement on the subject may be inferred to the contrary, all the partners will be adjudged entitled to share equally in the profits and be required equally to bear the losses, irrespective of the manner in which they may have contributed to the capital of the firm."

We are of the opinion, and so hold, that the parties to this action, Emily Foster and Benny D. Wright, were partners in the business known as Pronto Pup from June 1955 to June 5, 1959, and that the personal property divided by the Chancellor was in fact profits earned by the parties in Pronto Pup. The order of the learned chancellor dividing the property between the parties was therefore correct, and is affirmed.

Affirmed.

*McGehee, C.J.*, and *Arrington, Ethridge* and *McElroy, JJ.*, concur.