CHANDLER, J.,
for the Court.
¶ 1. Kelli Ann Holloway Parks and Larry Stephen Parks were divorced in May of *339 2004. The parties reached a settlement on all issues pertaining to the divorce except the amount of equity from the marital home each party was to receive. The chancellor valued the marital home at $130,000, found that the home contained $44,000 in equity, and awarded $10,000 of the home equity to Larry. Larry appeals, raising the following issues, which we quote verbatim from his brief:
I. WHAT IS A LAWYER’S DUTY TO THE PROPER AND FAIR ADMINISTRATION OF JUSTICE WHEN HE OR SHE HAS REASON TO BELIEVE THAT AN UNREPRESENTED OPPOSING PARTY MAY BE MENTALLY INCAPACITATED OR LACK PULL UNDERSTANDING OF THE LEGAL PROCESS
II. WHAT IS THE JUDGE’S DUTY IN THE PROPER AND FAIR ADMINISTRATION OF JUSTICE WHEN HANDLING A CASE WHEREIN ONE OF THE PARTIES IS UNREPRESENTED BY COUNSEL AND THERE IS A SUGGESTION THAT PARTY IS NOT BEING TREATED FAIRLY AND/OR THERE IS A QUESTION ABOUT MENTAL CAPACITY AND LACK OF UNDERSTANDING OF THE UNREPRESENTED PARTY
III. DID THE CHANCELLOR ERR IN APPROVING THE PROPOSED “PROPERTY RIGHTS CHILD SUPPORT AND CUSTODY MAINTENANCE AGREEMENT” BETWEEN THE PARTIES HEREIN, WITHOUT FIRST VOIR DIRING THE UNREPRESENTED PARTY, WHEN THE COURT PLEADINGS CONTAINED ALLEGATIONS OF PLAINTIFF/AP-PELLEE’S WRONGDOING WITH RESPECT TO MARITAL PROPERTY, HER FAILURE TO MAKE FULL FINANCIAL DISCLOSURE, HER ADMISSION TO VIOLATING THE COURT’S PREVIOUS ORDER PROHIBITING THE DISPOSITION OF MARITAL PROPERTY PENDING THE LITIGATION AND, THE CHANCELLOR HAS KNOWLEDGE OF A SUGGESTION OF DISABILITY ON THE PART OF THE UNREPRESENTED PARTY
IV. DID THE CHANCELLOR ERR IN FAILING TO, WITHIN 30 DAYS OF ITS FILING, CONSIDER, RULE ON, AND ENTER A WRITTEN ORDER OVERRULING APPELLANT’S MOTION FOR RECUSAL AND CHANGE OF VENUE
V.' DID THE CHANCELLOR ERR IN HIS CONSIDERATION, VALUATION, AND DIVISION OF THE PARTIES’ REAL PROPERTY IN THE ABSENCE OF COMPETENT, CREDIBLE, ADMISSIBLE EVIDENCE
¶ 2. Finding no error, we affirm.
FACTS
¶3. Kelli Ann Holloway Parks filed a complaint for divorce against Larry Stephen Parks. When the parties were separated, Kelli remained in the former martial home in Nesbit, Mississippi, and Larry moved to Memphis, Tennessee. Larry did not hire an attorney to represent him. On March 3, 2004, the parties engaged in a settlement conference and reached a property settlement agreement on the issues of child support, child custody, and equitable division of marital property. Following the conference, Kelli’s attorney drafted the document reflecting the terms of the agreement. The only issue to be decided by the chancellor was the division of equity from the former marital home. The chancellor held a hearing on May 11, 2004, and found that the value of the house was $130,000 with a mortgage balance of approximately $86,000, leaving $44,000 in *340 home equity. He awarded Larry $10,000 from the home equity.
I.WHAT IS A LAWYER’S DUTY TO THE PROPER AND FAIR ADMINISTRATION OF JUSTICE WHEN HE OR SHE HAS REASON TO BELIEVE THAT AN UNREPRESENTED OPPOSING PARTY MAY BE MENTALLY INCAPACITATED OR LACK FULL UNDERSTANDING OF THE LEGAL PROCESS
¶ 4. Larry claims that Kelli was well aware of Larry’s lack of education, lack of understanding of the law, and history of psychological treatment. He claims that Kelli’s attorney was imputed with her knowledge of Larry’s disabilities and that her attorney had the duty to take into account Larry’s disabilities during his communications with Larry. He also claims that Kelli’s attorney deliberately set hearings in forums that he knew would be inconvenient for Larry.
¶ 5. Pursuant to the comment to Rule 4.3 of the Mississippi Rules of Professional Conduct, a lawyer should not give advice to an unrepresented person other than to give the advice to obtain counsel. Kelli’s attorney was obligated to represent and protect the interests of Kelli. His only obligation to Larry was to recommend that he hire a lawyer. The property settlement agreement recites the fact that the agreement was prepared by Kelli’s attorney, that Kelli’s attorney does not represent Larry in the matter, and that Larry should hire his own lawyer to represent him. Kelli’s attorney behaved ethically in his communications with Larry.
¶ 6. Shortly after Kelli filed her complaint for divorce, she filed a motion for temporary custody and child support. This motion was heard in Yalobusha County, nearly two hours away from both DeSo-to County and Memphis. Larry claims that the forum was deliberately selected in order to inconvenience him. However, Kelli filed her complaint for divorce in DeSoto County, she continues to live in DeSoto County, and she hired an attorney whose office is in DeSoto County. There is no evidence to suggest that the forum was selected with the intent to inconvenience Larry.
II. WHAT IS THE JUDGE’S DUTY IN THE PROPER AND FAIR ADMINISTRATION OF JUSTICE WHEN HANDLING A CASE WHEREIN ONE OF THE PARTIES IS UNREPRESENTED BY COUNSEL AND THERE IS A SUGGESTION THAT PARTY IS NOT BEING TREATED FAIRLY AND/OR THERE IS A QUESTION ABOUT MENTAL CAPACITY AND LACK OF UNDERSTANDING OF THE UNREPRESENTED PARTY
III. DID THE CHANCELLOR ERR IN APPROVING THE PROPOSED “PROPERTY RIGHTS CHILD SUPPORT AND CUSTODY MAINTENANCE AGREEMENT” BETWEEN THE PARTIES HEREIN, WITHOUT FIRST VOIR DIRING THE UNREPRESENTED PARTY, WHEN THE COURT PLEADINGS CONTAINED ALLEGATIONS OF PLAINTIFF/AP-PELLEE’S WRONGDOING WITH RESPECT TO MARITAL PROPERTY, HER FAILURE TO MAKE FULL FINANCIAL DISCLOSURE, HER ADMISSION TO VIOLATING THE COURT’S PREVIOUS ORDER PROHIBITING THE DISPOSITION OF MARITAL PROPERTY PENDING THE LITIGATION AND, THE CHANCELLOR HAS KNOWLEDGE OF A SUGGESTION OF DISABILITY ON THE PART OF THE UNREPRESENTED PARTY
*341 ¶ 7. Larry claims that the chancellor erred when he failed to act when he knew or should have known that Larry was under duress and suffered from a mental disability. Larry further claims that the chancellor erred when the he failed to ask Larry questions to determine if Larry understood what he was signing when he signed the property settlement agreement.
¶ 8. The day before the chancellor held the hearing regarding the division of equity from the former marital home, Larry’s brother faxed a letter to the chancellor informing him that Larry was being treated by a psychologist and opining that Larry was not competent to understand the proceedings. The letter is not part of the trial record, and there is no evidence that the chancellor or Kelli’s attorney received the letter. “This Court will consider only those matters that appear in the record and does not rely on mere assertions in briefs.” Touchstone v. Touchstone, 682 So.2d 374, 380 (Miss.1996) (citing American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995)).
¶ 9. Before the chancellor rendered his decision, he gave Larry the opportunity to say anything he wished. Larry did not raise any issue of mental incapacity, mental illness or lack of understanding of the legal process. Larry said, “I just want it all behind me.” Larry did not make any claims of mental illness or lack of understanding of the law until he filed a motion in the chancery court to set aside the property settlement agreement. Issues that are raised for the first time on a motion for rehearing are procedurally barred. Brewer v. State, 819 So.2d 1169, 1175 (¶ 21) (Miss.2002).
¶ 10. Immediately after the chancellor awarded Larry his portion of the equity in the former marital home, Larry signed the property settlement agreement in the presence of the chancellor. Larry claims that the chancellor forced him to sign the agreement and that he had no opportunity to read it or consult with an attorney. The law presumes that a person is sane and mentally capable to enter into a contract.[1] Frierson v. Delta Outdoor, Inc., 794 So.2d 220, 224 (¶ 8) (Miss.2001) (citing Foster v. Wright, 240 Miss. 566, 572, 127 So.2d 873, 876 (1961); Hamilton Brothers Co. v. Narciese, 172 Miss. 24, 24 158 So. 467, 470 (1935)). The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity to establish it by a preponderance of proof. Id. (citing Foster, 240 Miss. at 572, 127 So.2d at 876). The law further presumes that a contract is freely entered into by the parties without coercion or overreaching. Singer v. Tatum, 251 Miss. 661, 691, 171 So.2d 134, 148 (1965). The chancellor did not err in allowing Larry to sign the property settlement agreement or in assuming that Larry was competent to participate in legal proceedings, absent any evidence to the contrary.
TV. DID THE CHANCELLOR ERR IN FAILING TO, WITHIN 30 DAYS OF ITS FILING, CONSIDER, RULE ON, AND ENTER A WRITTEN ORDER OVERRULING APPELLANT’S MOTION FOR RECUSAL AND CHANGE OF VENUE
¶ 11. After the temporary order granting child custody and child support was entered, Larry filed a petition demanding that all future proceedings be held in -DeSoto County and demanding *342 that the chancellor recuse himself. The petition was filed on September 24, 2003. On March 3, 2004, the chancellor denied Larry’s petition because Larry advised the court at the settlement conference that he did not wish to pursue his petition for recusal. Larry correctly notes that judges shall rule on motions for recusal within thirty days of the filing of the motion. Uniform Chancery Court Rule 1.11. However, the complaining party must file his complaint with the supreme court within fourteen days following the expiration of the thirty days allowed for ruling. M.R.A.P. 48(B). This issue is not properly before this Court.
¶ 12. Kelli remained a resident of De-Soto County after she separated from Larry, while Larry moved out of the state. The complaint for divorce was correctly filed in DeSoto County, the county where the resident party resides. Miss.Code Ann. § 93-5-11 (Rev.2004). The hearing regarding Kelli’s motion for temporary child support and child custody was held in the Yalobusha County Courthouse. The settlement conference was held in the Pa-nola County Courthouse. Yalobusha and Panola Counties are located within the same judicial district as DeSoto County.[2] Therefore, the proceedings that were held in the locations outside DeSoto County were in an appropriate venue. This issue is without merit.
V. DID THE CHANCELLOR ERR IN HIS CONSIDERATION, VALUATION, AND DIVISION OF THE PARTIES’ REAL PROPERTY IN THE ABSENCE OF COMPETENT, CREDIBLE, ADMISSIBLE EVIDENCE
¶ 13. A chancellor is responsible for determining the fair market value of the marital assets. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). After the value of the property is determined, the chancellor considers the Ferguson guidelines when effecting an equitable division of the property. These factors include: (1) economic and domestic contributions by each party to the marriage, (2) expenditures and disposal of the marital assets by each party, (3) the market value and emotional value of the marital assets, (4) the value of the nonmarital property, (5) tax, economic, contractual, and legal consequences of the distribution, (6) elimination of alimony and other future frictional contact between the parties, (7) the income and earning capacity of each party, and (8) any other relevant factor that should be considered in making an equitable distribution. Id. at 928. The chancellor needs to consider “only the factors which he finds applicable to the marital property at issue.” Wells v. Wells, 800 So.2d 1239, 1244 (¶ 8) (Miss.Ct.App.2001). When this Court reviews a chancellor’s judgment in property division we are not to conduct a Ferguson analysis anew, “but are to review the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion.” Id. at 1243 (¶ 8).
¶ 14. Kelli testified that she made four times as much income as Larry throughout the marriage. Larry incurred $25,000 in credit card debt that Kelli pays pursuant to the terms of the property settlement agreement. Kelli and Larry purchased the marital home for $105,000 and made a down payment of $5,000. Ninety percent of the down payment came from Kelli’s funds and ten percent came from Larry’s funds. Throughout the marriage, Kelli made all of the house payments. *343 Kelli obtained an appraisal of the home. The value of the home was appraised between $129,500 and $134,900. Larry did not dispute any of Kelli’s testimony during the trial.
¶ 15. The chancellor awarded Kelli a greater distribution of the home equity based on his findings that Kelli contributed more money towards the down payment of the home, made all of the house payments, and was the primary income earner throughout the marriage. At the same time, the chancellor recognized Larry’s domestic contributions to the marriage, such as taking lower-paying jobs so that he could take care of the children while Kelli devoted more time to her career. The record shows that the chancellor considered the relevant Ferguson factors in awarding Larry’s share of the home equity, and we affirm.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.

. A property settlement agreement is considered a contract. East v. East, 493 So.2d 927, 931-32 (Miss.1986).

. The Chancery Court of the Third Chancery District includes Desoto, Grenada, Montgomery, Panola, Tate, and Yalobusha Counties.