# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00882-COA

MANHATTAN NURSING AND                          APPELLANT
REHABILITATION CENTER, LLC

v.

BARBARA HOLLINSHED, INDIVIDUALLY          APPELLEE
AND ON BEHALF OF THE ESTATE OF
CHARLES ADAMS, DECEASED

| | |
|---|---|
| DATE OF JUDGMENT: | 07/22/2020 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CAROLINE CAMPBELL LOVELESS W. DAVIS FRYE GEORGE CLANTON GUNN IV |
| ATTORNEYS FOR APPELLEE: | JOHN F. HAWKINS RAFAEL RAMON GREEN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED AND REMANDED - 01/18/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. On October 6, 2017, Charles Adams filed a complaint against Manhattan Nursing and Rehabilitation Center LLC (Manhattan), Medserve P.A., Todd Fulcher, M.D., and John and Jane Does I-X in Hinds County Circuit Court, alleging negligence while he was a resident at Manhattan. Shortly thereafter, Manhattan filed a motion to compel arbitration on February 7, 2018. A hearing on Manhattan's motion took place on June 25, 2018. Over two years later, on July 22, 2020, the circuit court entered an order wherein Manhattan's motion to

compel arbitration was denied. More specifically, the circuit court held that Bridget Coleman did not have the authority to sign the arbitration agreement on Adams' behalf. Further, the court held that Adams lacked the capacity to sign the arbitration agreement on December 15, 2014, and, therefore, the arbitration agreement was not enforceable. On August 12, 2020, Manhattan filed a petition requesting an interlocutory appeal of the order denying the motion to compel arbitration. The Mississippi Supreme Court entered an order accepting Manhattan's petition for filing as a notice of appeal on September 30, 2020.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Just prior to being admitted to Manhattan, Adams was a patient at the University of Mississippi Medical Center (UMC). Adams was admitted to UMC on November 26, 2014, and discharged on December 1, 2014. Adams was discharged with orders to continue taking a sizeable list of medications including diazepam (Valium) and hydrocodone-acetaminophen (Norco). Shortly after his discharge from UMC, on December 8, 2014, Adams' "significant other," Bridget Coleman, completed and executed a series of documents to facilitate Adams' admission to Manhattan.[1] One such document was a "Resident and Facility Arbitration Agreement," which is of primary importance in this appeal. While all of the other signatures on the arbitration agreement, including Coleman's and the admissions coordinator's, were dated December 8, 2014, Adams' signature on the agreement was dated December 15, 2014.[2]

_____

[1] While the record includes multiple documents signed by Bridget Coleman, the actual admission agreement is not a part of the record on appeal.

[2] The question of whether Adams actually signed the arbitration agreement was originally an issue argued at the trial court level; however, that claim was abandoned and not argued on appeal. Further, Manhattan is not contesting the portion of the circuit court's

2

Adams became a Manhattan resident on December 9, 2014.

¶3.     On October 6, 2017, Adams filed a complaint alleging negligence against Manhattan and several other individuals and entities associated with Manhattan. On February 7, 2018, in response to Adams' complaint, Manhattan filed a motion to compel arbitration pursuant to the arbitration agreement that Adams signed on December 15, 2014. Manhattan's motion was ultimately denied on the basis that Adams lacked the capacity to sign the agreement and Coleman did not have the authority to sign the agreement on his behalf. Aggrieved by the circuit court's ruling, Manhattan appealed. In the pendency of litigation, Adams passed away June 16, 2019. Adams' daughter, Barbara Hollinshed, was substituted for Adams as the plaintiff in this matter individually and on behalf of Adams' estate.

## STANDARD OF REVIEW

¶4.     This Court reviews the factual findings in a trial court's grant or denial of a motion to compel arbitration under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions. *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020) (citing *Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 605-06 (¶8) (Miss. 2014)).

## ANALYSIS

¶5.     Manhattan argues that the circuit court erred in denying its motion to compel arbitration. It claims that the arbitration agreement is valid because Adams possessed the

---

ruling that Coleman lacked authority to execute the arbitration agreement on Adams' behalf. It asserts that Coleman's authority or lack of authority is irrelevant because Adams himself signed the agreement.

3

requisite mental capacity to execute the agreement. It further asserts that the parties' dispute is within the scope of the arbitration agreement and that there are no legal constraints external to the parties' agreement that foreclose the arbitration of Adams' claims. Adams' competency at the time that he executed the arbitration agreement is an essential element of Manhattan's argument and must be proven in order for either of its remaining assertions to hold merit.

¶6.   "The law presumes a person sane and mentally capable to enter into a contract. . . . The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity to establish it by a preponderance of proof." *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (¶8) (Miss. 2001) (citing *Foster v. Wright*, 240 Miss. 566, 572, 127 So. 2d 873, 876 (1961)); *see also Liberty Health & Rehab. of Indianola LLC v. Howarth*, 11 F. Supp. 3d 684 (N.D. Miss. 2014). In determining mental competency, the Mississippi Supreme Court has established a test wherein an individual must be able to "know or understand his legal rights sufficiently well to manage his personal affairs" to be considered competent. *Est. of St. Martin v. Hixson*, 145 So. 3d 1124, 1131 (¶16) (Miss. 2014) (quoting *Rockwell v. Preferred Risk Mut. Ins. Co.*, 710 So. 2d 388, 391 (¶9) (Miss. 1998)). In this case Adams' counsel had the burden of proving that Adams lacked the mental capacity to execute the arbitration agreement on December 15, 2014, to invalidate the agreement. The circuit court in this case had only the arguments of counsel and the attachments to the motion, response, and reply pleadings to rely on in making its decision to deny Manhattan's motion to compel arbitration.

4

¶7.    Adams' medical records from UMC from the dates immediately prior to his admission to Manhattan were attached to his response to the motion to compel as Exhibit A.  Upon admission to UMC, the records indicate that Adams had an "altered mental status."  The records went on to state that the "etiology" of his "active problems" was unclear; however, "possibly partial treatment of UTI (although UA negative for infection), **more likely oversedation from medications** (patient taking Valium, Baclofen, Xanaflex, which were **not on medication list**)." (Emphasis added).  Upon leaving UMC, the discharge diagnoses stated that his altered mental status had improved; **but**, he was given a discharge medication list containing thirteen different medications, including Valium, Baclofen, Xanaflex, and Norco.

¶8.    The affidavit of Adams' daughter, Barbara Hollinshed, was also attached to Adams' response as Exhibit B.  In her affidavit, Hollinshed stated:

> My father had a spinal cord injury as the result of a fall.  Due to this injury, my father was prescribed some very intense pain medication.  On two separate occasions . . . my father presented to the University of Mississippi Medical Center with an altered mental status.  On his discharge, he was given oxycodone and valium to take among other medications.  On December 1, 2014 – December 8, 2014, my father exhibited some odd behaviors.  He would have mood swings that included crying episodes and he constantly talked about death and knowing he was about to die.  My father was not in a position to care for himself or make decisions for himself. . . .  Therefore I don't believe my father was mentally capable of signing and understanding the Arbitration Agreement on December 15, 2014.

(Numbering omitted).

¶9.    Manhattan's admissions notes and care plan were attached to Adams' response as Exhibit I.  According to Manhattan's own records Adams had a "diagnosis of depression

5

with altered mood & behavior," such as "yelling out disruptively, [being] anxious and easily annoyed; [and a] decline in psychosocial well being." Handwritten notes on the care plan describe his demeanor and behavior as agitated frequently; confused at times; frequent refusal of care, medicine, and meals; attempts to throw himself out of bed and chairs; curses and spits at staff; and combative. Finally, Manhattan's records also reflect that Adams was receiving thirteen medications, including Norco and Valium.

¶10.    The affidavit of Dorothy Allen was attached to Adams' response as Exhibit J. Allen's affidavit stated that she had been a friend of Adams for over forty years. According to Allen,

> Between December 9, 2014 and December 15, 2014, I went to visit [Adams] twice at Manhattan Nursing and Rehabilitation Center, LLC. During both visits, my friend of over forty (40) years did not recall who I was. He is normally talkative, and he was not responding to me. It seemed as if he was full of medication and could not respond to me. He was slumped over in the bed, and his eyes were rolling in the back of his head. After both visits, I called his daughter, Barbara, and told her about his condition.

(Numbering omitted).

¶11.    Manhattan relies on the affidavit of its admissions coordinator, Alahna Allen Wilkins, and a document signed by Adams' physician, Todd Fulcher, in its argument that Adams possessed the requisite mental capacity to sign the arbitration agreement. Notably, however, is the fact that Wilkins' signature on the arbitration agreement was dated December 8, 2014, a week before Adams signed the agreement. Further, while her affidavit claims that she explained the arbitration agreement to Adams on the day that he signed it, December 15, 2014, and that "[his] mental faculties seemed intact," her affidavit was not executed until April 20, 2018, over three years after the agreement was executed. Finally, the document

6

signed by Dr. Fulcher that stated that Adams had the capacity to understand the significance of making healthcare decisions was not dated until December 22, 2014, days after Adams had signed the arbitration agreement. It was also signed in conjunction with another Manhattan form entitled "Appointment of Surrogate" and not in conjunction with the arbitration agreement.

¶12. Given the multiple exhibits attached to Adams' response to Manhattan's motion to compel arbitration and the information contained therein regarding Adams' medication, mental status, and behavior, we find no abuse of discretion in the circuit court's ruling that Adams lacked the capacity to sign the arbitration agreement on December 15, 2014. Further, given this Court's finding no error in the circuit court's ruling on that issue, Manhattan's remaining arguments are moot. We affirm the circuit court's order denying Manhattan's motion to compel arbitration and remand for further proceedings consistent with this opinion.

## CONCLUSION

¶13. After review of the record, we find no error in the circuit court's ruling that Adams lacked mental capacity to sign the "Resident and Facility Arbitration Agreement." As such all other arguments asserted by Manhattan are moot. The circuit court's ruling is affirmed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

¶14. **AFFIRMED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**

7