[No. 4467. Decided September 21, 1904.]

CHARLES P. COEY, *Appellant*, v. JAMES R. LOW *et al.,* *Respondents.*[1]

REPLEVIN — SOURCE OF TITLE — PLEADING — DEFENSES — SHOWING INVALIDITY OF TITLE UNDER GENERAL DENIAL. Where the plaintiff in an action of replevin alleges generally the ownership and right of possession of certain wheat, and at the trial claims by virtue of a written lease of the lands on which the wheat was raised, the defendants may show the invalidity of the lease under a general denial, since they need not anticipate the source of plaintiff's title when the same is not disclosed by the complaint.

INDIANS—CONTRACTS—LEASES—APPROVAL BY INDIAN DEPARTMENT. A lease of lands in the Cœur d'Alene Indian reservation from an Indian to a white man is void unless approved by the Indian department.

[1]Reported in 77 Pac. 1077.

REPLEVIN — WHEAT RAISED UNDER INVALID LEASE — POSSESSORY RIGHTS—INDIAN LEASE NOT APPROVED BY DEPARTMENT. Where the plaintiff leased lands in a reservation from the Indian owner by a written lease, which was void because not approved by the Indian department, and subsequently sublet the same on shares, furnishing the seed and paying for threshing the wheat raised, and his share was set aside for him by the sub-tenants, but the same came into the possession of the Indian owners of the land, claiming the right thereto, replevin will not lie in favor of the plaintiff on the theory that courts will protect the possessory right under such circumstances; since the plaintiff was never in the actual possession of the land or the wheat, and cannot claim constructive possession by virtue of an unlawful lease.

Appeal from a judgment of the superior court for Clarke county, A. L. Miller, J., entered December 13, 1902, upon findings in favor of the defendants, after a trial before the court without a jury, dismissing on the merits an action of replevin. Affirmed.

*Moore & Corbett,* for appellant.

*Merritt & Merritt,* for respondents.

PER CURIAM.—Charles P. Coey commenced this action in the superior court of Spokane county against James R. Low, Virginia Low, his wife, Ted Butler, and the Sheldon Milling Company, a corporation, to recover the possession of five hundred sacks of wheat, or $400, its value, in case a delivery thereof cannot be had, with damages for unlawful detention, and also costs and disbursements. The plaintiff in his complaint alleged ownership of, and right of possession to, such personal property, and that the defendants, on the 7th day of October, 1901, at Kootenai county, Idaho, wrongfully took such goods, chattels, and property from his possession. Plaintiff further alleges demand for the restoration of such property, prior to the commencement of this action, and the wrongful detention

thereof by defendants. The defendants, James R. and Virginia Low, and Ted Butler answered by general denial of each and every allegation contained in the complaint. The action was thereafter dismissed on motion of plaintiff as against The Sheldon Milling Company.

The cause came on for trial before the lower court, without a jury. The court made findings of fact and stated conclusions of law, as follows:

"(1) That the wheat described in the plaintiff's complaint was grown upon lands within the Coeur d'Alene Indian reservation. (2) That on the 1st day of April, 1897, one Julian Butler and the plaintiff entered into a contract whereby they agreed that the said Julian Butler leased said land to the plaintiff herein for an uncertain and indefinite period, being for such a time that one-third of the crops from said premises would pay certain unknown indebtedness to the plaintiff in this case. (3) That thereafter the plaintiff verbally sublet said premises to True James and William Shearer, who farmed said land in the year 1899, 1900 and 1901, and by the terms of said lease the said True James and William Shearer were to render to the plaintiff herein one-third of all the crops grown on said land during each of said years. (4) That the said True James and William Shearer occupied said lands under said verbal lease during the cropping season of 1901, and grew and harvested the wheat described in the complaint. (5) That the plaintiff herein is a white man residing in the county of Spokane, state of Washington, and not a member of the Coeur d'Alene tribe, and that said written lease entered into by said Julian Butler and the plaintiff and the verbal lease, whereby said premises were sublet by the plaintiff True James and William Shearer, never received any approval of the Indian department. (6) That the plaintiff has no right or title to the wheat described in the complaint, except such right as he might have in law by virtue of the said leases of said Indian lands existing between him and the said Jul-

ian Butler, and between him and the said True James
and William Shearer.

"And as conclusions of law upon the foregoing findings
of fact, the court makes and files the following, to wit:
That said leases were void and of no force and effect;
and that plaintiff was not in possession of said land and
did not raise and harvest said wheat; and that the plain-
tiff is not entitled to recover anything by this action and
defendant is entitled to the return of said wheat."

Plaintiff excepted to each finding of fact save the first,
and also excepted to the conclusions of law above stated.
He requested the trial court to make and state certain
findings and conclusions of law in his behalf, establishing
his ownership of, and right of possession to, the property
in question, at the commencement of the present action.
These exceptions were overruled and such requests were
denied, and plaintiff duly excepted. Plaintiff thereupon
made and filed his motion for a new trial on certain statu-
tory grounds. This motion was denied, exception taken,
and judgment was entered in favor of the answering de-
fendants. Plaintiff appeals.

The facts presented in this controversy are practically
undisputed. At the trial, the appellant, not having the
original lease in his possession or under his control, intro-
duced a copy thereof in evidence, which was excluded by
the trial judge, except for the purpose of explaining ap-
pellant's possession of the property in controversy at the
time of the alleged wrongful taking thereof. Appellant
furnished the seed from which the wheat described in the
complaint was grown, and paid for the threshing thereof.
Witness True James, for appellant, testified in part as
follows: that the land on which this wheat was grown
was a part of the Coeur d'Alene reservation, in Kootenai
county, Idaho; that witness and his brother-in-law, Shear-
er, leased this land from appellant for three years, begin-

ning in 1899, paying appellant, Coey, one-third of the crops raised thereon. The wheat in controversy was grown on this land in 1901. When the wheat was threshed one-third part thereof was set apart for Coey. Respondent Low, husband of Mrs. Low, notified James and Shearer at that time not to let Coey have any part of the wheat, "and not to let him on the ground. If he come there to put him off." This wheat was afterwards placed in Low's sacks, and hauled into Spokane county, and replevied in the present action, the respondents furnishing a redelivery bond. Witness James further testified, on his cross examination, in response to questions propounded to him:

"Q. You say that you had seen Mr. Low before you commenced threshing? A. Yes. Q. About how long? Two or three weeks or days? A. I don't know how long it was. Q. At that time did he tell you of his wife's claim to the land? A. He told me Mr. Coey had no right at all. . . . Q. You let his men put it in sacks and haul it away? A. Yes, sir. Could not do any other way. Q. Was Coey down? A. No, sir. Q. Coey did not go out at all? A. Never on the land at all."

There was no testimony that the above written lease was ever approved by the Indian department of the United States. Respondents were and are Indians belonging to the Coeur d'Alene tribe. Respondents Virginia Low and Ted Butler are the children of Julian Butler, deceased. James R. Low is the husband of Virginia.

For the purposes of this litigation these parties have been treated as the successors in interest of Julian Butler. Major Albert M. Anderson, agent for the Colville, Spokane, and Coeur d'Alene Indian reservations, testified that he never approved this written lease. Mr. Geo. F. Steele, who was in charge of the Coeur d'Alene reservation in the absence of the agent, testified that, "It was always understood that we could not lease the land. . . . There

was a written rule in the office, that we went by, that Indian lands could not be leased;" that labor contracts for the first year's crops had been approved. This witness further said: "Yes, I approved of the agreement that Mr. Coey made with old Mr. Butler; that is, I approved of it by stating verbally I thought the agreement was a very good way to get straightened up with their debts."

The assignments of error are presented and argued in appellant's behalf under two heads. It is contended that the trial court erred in holding the two leases, noted in the findings and conclusions of law, void. It is stated in appellant's brief that,

"The validity or illegality of the leases was not a matter in issue. There was no pleading putting the same in issue. The defendants, to avail themselves of any illegality of the leases, or to raise any question as to same, were bound to plead such illegality."

The case of *Maitland v. Zanga,* 14 Wash. 92, 44 Pac. 117, is cited in support of such contention. The case cited was an action brought to recover damages on an agreement to convey land. The complaint disclosed the nature of the agreement on which the action was founded; the illegality of the contract did not appear from the face of the pleading, but depended on collateral facts. Judge Dunbar observed, in delivering the opinion of the court:

"But, while it is true that the courts will not enforce illegal contracts, the fact that such contract is illegal must be determined like any other fact, and to be fairly determined it must be made an issue by the pleadings, or be determined by the admission of the plaintiff or by testimony which, in the language of the supreme court of the United States, 'must necessarily prove the illegality of the contract,' as in the instance cited by the court, or where some public record was introduced which could not be disputed. In that event the reason for requiring it to be pleaded would not attach."

Further along in such opinion, the case of *Ah Doon v. Smith*, 25 Ore. 89, 34 Pac. 1093, is cited, from which the following language is quoted with approval: "No waiver by the defendant, or neglect to plead such defense, can oblige the court to entertain an action founded upon an illegal or immoral contract, when such illegality appears." There is no question as to the general rule of pleading, that the facts constituting the plaintiff's cause of action and the defendant's grounds of defense must be alleged. But this principle has never been carried so far that a party defendant must, at his peril, anticipate in his answer evidentiary matters which may, or may not, be introduced at the trial of the action, in support of plaintiff's complaint, in which no reference thereto has been made. This rule has been most frequently recognized and applied with regard to the necessity of pleading, as ultimate facts, evidences of title in actions for the recovery of real estate and specific personal property. *Chamberlin v. Winn*, 1 Wash. 501, 20 Pac. 780; *Kerron v. Northern Pac. Lumb. etc. Co.*, 1 Wash. 241, 24 Pac. 445; *Gila Valley etc. R. Co. v. Gila County* (Ariz.), 71 Pac. 913, and authorities cited. A good illustration of the proposition of law under discussion is furnished in actions for the recovery of goods and chattels, wherein plaintiff alleges ownership thereof in general terms, and, at the trial, seeks to sustain his allegations in that behalf by introducing in evidence a bill of sale in which he is named as vendee of such property. It is held that a defendant, under a general denial in such cases, may prove the instrument, under which plaintiff claims, fraudulent and void as to his (defendant's) rights in the property sought to be recovered. "This rule is doubtless based on the fact that in replevin the plaintiff is not bound to disclose any source of title, and therefore the defendant is

not bound to anticipate the source of title under which the plaintiff may claim." *Jones v. McQueen,* 13 Utah 185. See, further, Cobbey, Replevin (2nd ed.), §§ 752,755; *Gallick v. Bordeaux,* 22 Mont. 470, 56 Pac. 961. We think that, in this class of actions, when a plaintiff fails to disclose the source of his title to the property that he seeks to recover, the defendant may show, under a general denial, that the instrument under which plaintiff claims title is illegal. Furthermore, courts will not lend their aid in any event to the enforcement of illegal agreements. *Minnesota Sandstone Co. v. Clark,* 35 Wash. 466, 77 Pac. 803. In the case of *Melchoir v. McCarty,* 31 Wis. 252, 11 Am. Rep. 605, the following pertinent language is used by Justice Lyon, delivering the opinion of the court:

"The general rule of law is, that all contracts which are repugnant to justice, or founded upon an immoral consideration, or which are against the general policy of the common law, or contrary to the provisions of any statute, are void; and that, if a party claiming a right to recover a debt is obliged to trace his title or right to the debt through any such illegal contract, he cannot recover, because he cannot be allowed to prove the illegal contract as the foundation for his right of recovery. It is quite immaterial whether such illegal contract be *malum in se,* or only *malum prohibitum.* In either case the maxim, *ex turpi causa non oritur actio,* is applicable. And a contract in violation of a statute is void although the statute fails to provide expressly that contracts made in violation of its provisions shall not be valid. It is sufficient that it is prohibited, and its invalidity follows as a legal consequence."

We think that there can be no serious question in this controversy regarding the invalidity of the written contract between Julian Butler and appellant. If the latter had no right of possession in and to this land and the crops grown thereon, it was impossible for him to invest

his tenants, James and Shearer, with any greater rights therein than he himself possessed at the times above stated.

"Undoubtedly, the right of the Indian nations or tribes to their lands within the United States was a right of possession or occupancy only; the ultimate title in fee in those lands was in the United States; and the Indian title could not be conveyed by the Indians to any one but the United States, without the consent of the United States." *Jones v. Meehan,* 175 U. S. 8, 20 Sup. Ct. 1.

Article V, Treaty with Coeur d'Alene Indians; *Light v. Conover,* 10 Okl. 732, 63 Pac. 966. Under the authority last cited, the court held that it was incumbent upon the lessor, in an action against his lessees for the recovery of rent of lands lying within the boundary lines of Indian reservations, to show that he had a valid contract, made with the consent and approval of the Indian agent and the commissioner of Indian affairs, before the lessor could legally enter into any contract to sublet any portion of such lands; and that such subletting must be sanctioned by both agent and commissioner. U. S. Rev. Stat., § 2116. Furthermore, according to the rule enunciated in *Jones v. Meehan, supra,* and cases therein cited, it would seem that leases and contracts of this description must be authorized and sanctioned by some act of congress or treaty regulation. Otherwise, such instruments are illegal and void. The trial court committed no error in declaring the foregoing leases void.

The appellant next contends that,

"Conceding, for the sake of argument, that the court was right in holding the contracts leases, and, as such, void, still we insist the court was in error in denying a recovery to appellant. The error consisted in holding that the possession of James and Shearer was not the possession of appellant."

He was not in the actual possession of the land or wheat in controversy, at the time of the alleged wrongful taking mentioned in his complaint. It is therefore evident that he could not have been in the lawful constructive possession of such property, under an illegal contract by his tenants or otherwise. "The stream cannot rise above its source." If the respondents had forcibly taken this wheat from the actual possession of appellant, while it was on the reservation, and brought it into Spokane county, and appellant had there replevied the property in question, a different proposition would have presented itself for our consideration. *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406. The counsel for appellant have cited numerous authorities on the proposition that, where crops were grown on government land under an invalid lease or contract, courts have been inclined to uphold the possessory title to such crops, of the lessor and lessee, or the party in peaceable possession thereof, under a claim of right made in good faith. *Buckhalter v. Nuzum,* 9 Kan. App. 885, 61 Pac. 310, cited by appellant's counsel, furnishes a fair illustration of the application of this proposition of law. In that case it appeared that the crop of corn, which was the subject-matter of the action, was grown upon the land embraced within the limits of the Iowa Indian reservation, Brown county, Kansas, allotted to Anna E. Richardson, an Indian woman. She entered into a written contract with one Ryan to raise and crib the corn on her land, at the rate of ten cents per bushel. Anna Richardson thereafter assigned, in writing, for a valuable consideration, all her interest in this Ryan agreement to Nuzum, with the assent of Ryan, guaranteeing Nuzum peaceable and full possession of the land mentioned in the contract. Ryan proceeded to plant and raise the crop under the direction of Nuzum. Buckhalter, the plaintiff in error (defendant

in the trial court), claimed title to the corn in controversy by virtue of a levy and sale thereof, under a judgment rendered against Anna E. Richardson and her husband. In the opinion of the court the following language may be found:

"The corn, as claimed by the defendant in error, and as found by the jury, was in the possession of the defendant in error [Nuzum], and was raised and cribbed by him, or under his direction."

The court held that Nuzum was entitled to a restitution of the property, that Buckhalter took nothing by reason of the levy and sale. The distinguishing features between the above case and the action at bar are that the controversy in the Kansas case was not between parties to the original transaction, or their legal representatives, but arose between parties claiming adversely to the allottee and the party in actual peaceable possession of the property replevied. The actual possession of Nuzum, under a claim of right, seems to have been the basis of the decision of the court given in his favor. In the present controversy, the evidence in appellant's behalf shows undisputably that he was not in the actual possession of the wheat in question, or the land on which it was raised. Therefore, he could not have had constructive possession, in any legal sense, under an unlawful contract.

As we find no reversible error in the record, we are of the opinion that the judgment of the superior court must be affirmed, and it is so ordered.