IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| YING CHAN, | ) | No. 80619-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WHATCOM OPPORTUNITIES REGIONAL CENTER, INC., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Ying Chan brought suit for breach of contract against Whatcom Opportunities Regional Center, Inc. (WORC) based on their agreement for his work on an immigration investor project. WORC asserted an affirmative defense of illegality, claiming the contract violated certain federal securities regulations, and Chan responded that WORC was estopped from raising that affirmative defense. After years of litigation, a jury trial was conducted which resulted in a verdict in Chan's favor and the trial court entered judgment for him. WORC appealed, claiming that the trial court erred by instructing the jury on Chan's theory of equitable estoppel and by entering judgment in favor of Chan. Because equitable estoppel may not be used to enforce an illegal contract, we reverse and remand.

FACTS

The United States Citizenship and Immigration Service (USCIS) EB-5[1] Immigrant Investor Program[2] (EB-5) allows foreign nationals to obtain lawful permanent resident status by investing $500,000 in an approved project that is shown to create a specific number of new permanent jobs in the United States. WORC was authorized by USCIS to develop EB-5 projects and sell interests to qualified foreign investors.

In 2007, WORC received USCIS approval for a project to develop retirement homes in Whatcom County. WORC entered into a contract with Ying Chan to employ him to help with their operations in China. Chan is a Chinese citizen who earned his undergraduate, master of business, and law degrees in the United States. The terms of the employment contract expressly indicate that Chan was both a vice president of WORC and an independent contractor. WORC paid Chan after he submitted periodic invoices for his services.

To obtain immigration benefits from participation in an EB-5 project, a foreign investor must obtain an I-526 approval from USCIS. Chan's primary task was to work with licensed immigration agents in China to help connect the clients of those immigration firms with investment projects in the United States, such as WORC. Chan helped verify that individuals were qualified for the program and assisted in ensuring that the immigration documents were prepared properly and that other necessary steps were completed. Because WORC's securities were

---

[1] Employment–Based Immigration, Fifth Preference.
[2] Immigration Act of 1990, Pub. L. 101–649, § 121(a), 104 Stat. 4978, 4987.

offered under Securities Regulation D[3], Chan would also verify that participants met the requirements for accredited investors under federal securities law. Once Chan had obtained signed subscription agreements and ensured the completion of all the documents, he would send the packets to WORC president, David Andersson, for review and submission to USCIS.

Upon submission of the subscription agreement to WORC, investors paid WORC a $40,000 transaction fee and separately deposited the $500,000 investment into Andersson's escrow account. When the I-526 application was approved, the investor's $500,000 would be released to WORC and WORC would issue a limited liability company membership unit to the investor. Pursuant to Chan's contract with WORC, he would be paid a $5,000 commission upon approval of each investor's I-526 and four subsequent annual residual commissions in the amount of $5,000 for each successful I-526 applicant.

Chan and WORC believed that neither WORC nor Chan needed to be registered as brokers with the Securities and Exchange Commission (SEC) because Chan was a Chinese national operating entirely in China. Chan raised this question in 2010 when he asked Andersson if he needed to be registered in connection with the parties' second employment agreement. Andersson replied that he had been told by the attorney for a prominent EB-5 businessman in Seattle, a common acquaintance of theirs, that Chan did not need to register as a broker. As a result, Chan never sought registration and it does not appear that he inquired

---

[3] 17 C.F.R. §§ 230.500–.508.

any further or independently investigated to determine whether registration was necessary.

In 2012, following SEC enforcement actions surrounding EB-5 investment operations, and after the Whatcom County project was fully funded, WORC stopped providing payment to Chan. WORC alleges this was due to its belief that payment to Chan would be illegal. There is no indication that the SEC took enforcement action as to WORC, Andersson, or Chan in connection with this project. WORC, however, did not provide Chan with notice that it was terminating payments nor did it offer any justification as to why payments had stopped. At the point when it ceased payment, WORC had paid out all initial commissions for investors, but had not provided Chan any of the residual commissions due for each investor under the terms of their agreement.

In 2015, Chan filed suit to enforce his contract with WORC, seeking payment of his remaining commissions. WORC asserted illegality as an affirmative defense. The trial court denied WORC's motion for summary judgment based on its illegality defense. After lengthy and sporadic litigation, the case was eventually tried to a jury in 2019. The jury was instructed on both illegality and estoppel. The jury was also provided a special verdict form which presented nine questions to answer. Following the verdict, both WORC and Chan moved for entry of judgment on the special verdict form. The trial court denied WORC's motion and entered judgment for Chan in the amount of $940,000. WORC now appeals.

- 4 -

ANALYSIS

WORC's primary challenge is that the jury was improperly instructed on estoppel, which ultimately led to the court's entry of judgment in favor of Chan. "In general, whether to give a particular instruction is within the trial court's discretion." Taylor v. Intuitive Surgical, Inc., 187 Wn.2d 743, 767, 389 P.3d 517 (2017). Jury instructions are sufficient if they (1) allow each party to argue its theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law. City of Bellevue v. Raum, 171 Wn. App. 124, 142, 286 P.3d 695 (2012). This court reviews the adequacy of jury instructions de novo as a question of law. Id. An instruction that contains an error as to the applicable law is reversible error where it prejudices a party. Id. WORC's assignment of error is not directed at the language of the instruction provided, but instead the propriety of giving an instruction on estoppel in the context of an assertion of illegality as an affirmative defense. The prejudice alleged is that instructing the jury on estoppel led to entry of judgment against WORC because the jury determined that it was estopped from asserting the illegality defense. The unique posture of this case requires analysis of a number of foundational issues underpinning our ultimate conclusion, some of which were not fully resolved prior to this appeal.

I.    Waiver

As a preliminary matter, Chan avers in his response brief that the central question of this appeal was not preserved.[4] This argument is not well taken. His

_____

[4] Chan also spends a significant portion of his briefing arguing applicability of the doctrine of in pari delicto and related alleged errors. This issue is not properly before this court as any error

assertion that WORC did not properly take exception to the estoppel instruction is unsupported by the record. WORC's objection to the notion that estoppel could be raised as a response to its affirmative defense of illegality spanned the entirety of the case. Chan further asserts that WORC invited error by proposing an instruction on estoppel. This is incorrect as "a party may object to its own instruction and, if it does so, it preserves the issue for appeal." Ford v. Trendwest Resorts, Inc., 146 Wn.2d 146, 151 n.2, 43 P.3d 1223 (2002). Here, it was clear that the court intended to instruct on equitable estoppel after much argument from the parties. Understanding the ruling of the trial court, and after it had documented its objection in the record, WORC submitted a proposed instruction consistent with that ruling. WORC did not invite error and the issue was preserved for appeal.

II.     Estoppel

"Equitable estoppel prevents a party from taking a position inconsistent with a previous one where inequitable consequences would result to a party who has justifiably and in good faith relied." Byrd v. Pierce County, 5 Wn. App. 2d 249, 258, 425 P.3d 948 (2018). "Equitable estoppel is available only as a shield, or defense; it is not available as a sword, or cause of action." Motley-Motley, Inc. v. State, 127 Wn. App. 62, 73, 110 P.3d 812 (2005).

Here, Chan sought to utilize equitable estoppel to overcome WORC's affirmative defense of illegality. WORC argues on appeal, as it did in the trial court, that equitable estoppel is not available to remedy an illegal contract. WORC is

---

on this matter was not preserved at the trial court, nor did Chan raise the issue in a cross-appeal. RAP 2.4(a); See Modumetal, Inc. v. Xtalic Corp., 4 Wn. App. 2d 810, 834–37, 425 P.3d 871 (2018).

correct; it has long been true that estoppel may not be utilized to enforce a contract found to be illegal. See State v. Nw. Magnesite Co., 28 Wn.2d 1, 26–29, 182 P.2d 643 (1947). "A contract that is illegal is void—that is, null from the beginning and unenforceable by either party." Bankston v. Pierce County, 174 Wn. App. 932, 938, 301 P.3d 495 (2013). "A contract that is contrary to the terms and policy of a statute is illegal and unenforceable." Vedder v. Spellman, 78 Wn.2d 834, 837, 480 P.2d 207 (1971). Over a century ago, our state's highest court made clear that "[v]alidity cannot be given to an illegal contract through any principle of estoppel." Reed v. Johnson, 27 Wash. 42, 56, 67 P. 381 (1901).

Given our state's clear case law that equity is not available in the context of an illegal contract, we must focus on specifically how the jury was instructed. Instruction #8 provided the following:

> The defendant, Whatcom Opportunities Regional Center, Inc., asserts the affirmative defense of illegality. In most situations, the law will not enforce an illegal contract even if it has been breached. Whatcom Opportunities Regional Center, Inc.[ ]claims that the parties' agreements were illegal because Mr. Chan was not registered as a securities broker. Whatcom Opportunities Regional Center, Inc. has the burden of proving this defense.
>
> Mr. Chan denies that he was required to register as a securities broker. He further claims that if he was required to register, that requirement was excused because Mr. Andersson told him that he did not have to register, and he relied on that statement. Mr. Chan has the burden of proving these claims.
>
> If you find that Mr. Chan was not required to register as a securities broker, then you must find that Whatcom Opportunities Regional Center, Inc. has failed to prove its affirmative defense of illegality.
>
> If you find that Chan was required to register as a securities broker, you must then consider the estoppel issue that is described in a separate instruction.

The trial court needed resolution on underlying disputes of fact as to the competing theories of the parties, such as illegality and estoppel, in order to be able to rule on the legal issues in the case. This was most particularly true as to the illegality defense, which was critical to the determination as to whether estoppel could be properly raised.

The jury was tasked with resolving multiple factual issues which can be identified through the questions and guidance posed in the special verdict form:

> QUESTION 1: Did Ying Chan and Whatcom Opportunities Regional Center, Inc. (WORC) enter into a contract before October 1, 2009?
> ANSWER: (Write "yes" or "no") YES
> Please proceed to Question 2.
>
> QUESTION 2: Did Chan fully perform his obligations under the contract you have found?
> ANSWER: (Write "yes" or "no") YES
> If your answer is "yes," please proceed to the next question.
> If your answer is "no," the presiding juror should sign and return this Verdict Form.
>
> QUESTION 3: Did WORC fully perform its obligations under the contract?
> ANSWER: (Write "yes" or "no") NO
> If your answer is "no," please proceed to the next question.
> If your answer is "yes," the presiding juror should sign and return this Verdict Form.
>
> QUESTION 4: Was Chan damaged as a result of WORC's breach of the contracts?
> ANSWER: (Write "yes" or "no") YES
> If your answer is "yes," please proceed to the next question.
> If your answer is "no," the presiding juror should sign and return this Verdict Form.
>
> QUESTION 5: What is the amount of damages that Chan suffered as a result of WORC's breach of the contracts?
> ANSWER: $940,000 (USD)
> Please proceed to the next question.

QUESTION 6: Did Chan effect or induce the purchase or sale of interests in WORC's investments?
ANSWER: (Write "yes" or "no") YES
If your answer is "yes," please proceed to the next question.
If your answer is "no," the presiding juror should sign and return this Verdict Form.

QUESTION 7: Did David Andersson make a statement or statements to Chan about whether Chan was required to register as a securities broker?
ANSWER: (Write "yes" or "no") YES
If your answer is "yes," please proceed to the next question.
If your answer is "no," the presiding juror should sign and return this Verdict Form.

QUESTION 8: Did Chan rely on Andersson's statement?
ANSWER: (Write "yes" or "no") YES
If your answer is "yes," please proceed to the next question.
If your answer is "no," the presiding juror should sign and return this Verdict Form.

QUESTION 9: Was Chan's reliance reasonable and justifiable?
ANSWER: (Write "yes" or "no") YES

Instruction #8 and the special verdict form both ask the jury to determine equitable estoppel issues if the jury determined that Chan did effect or induce the sale of WORC's investments. If Chan effected or induced the sale of WORC's investments, he would be required to register with the SEC as a broker. 15 U.S.C. § 78c(4); 15 U.S.C. § 78o(a)(1). The parties agreed that Chan was not registered, so if he was in violation of an SEC requirement, then WORC argued that requiring payment under their agreement would be enforcement of an illegal contract. Because they tasked the jury with considering estoppel to defeat a claim of illegality, instruction #8 and questions seven through nine on the special verdict form were improper under state law.

Chan responds by asserting that federal law allows for estoppel in a case involving federal securities law, but provides no authority as to the narrower issue of why federal equitable remedies would be available in a state court action seeking enforcement of an employment contract. Neither party could identify controlling case law, or statutory authority, when presented with that precise question at oral argument. Washington has developed an extensive body of case law clearly holding that our courts will not enforce an illegal contract, but may leave the parties to such a contract where it found them. Coey v. Low, 36 Wash. 10, 17, 77 P. 1077 (1904); Morelli v. Ehsan, 110 Wn.2d 555, 561-63, 756 P.2d 129 (1988); Hammack v. Hammack, 114 Wn. App. 805, 810–11, 60 P.3d 663 (2003). In the absence of any controlling precedent directing that decisions in federal courts to fashion equitable remedies in specific cases brought under the Federal Securities Act of 1934 force our state courts to import that practice into a state claim for breach of contract, we decline to so hold. Further, the cases cited by Chan to indicate that estoppel would be available are not as supportive as he posits because their procedural postures are wholly distinct; to reiterate, Chan brought a breach of contract claim under Washington law in state court.

However, Go2Net, Inc. v. Freeyellow.com, Inc. is informative as to the issues before us because the analysis in the court of appeals opinion robustly examines the public policy concerns of allowing or barring equitable remedies in Washington courts in the context of an illegal securities agreement, while acknowledging the permissiveness in federal courts as to such remedies. 126 Wn. App. 769, 109 P.3d 875 (2005). In Go2Net, this court addressed the question of

whether equitable remedies are available in a case wherein the plaintiff brought an action for fraud, breach of contract, and violation of antifraud provision of the Securities Act of Washington.[5]  Id. at 774.  Washington's Securities Act was silent as to the availability of equitable remedies.  Id. at 775.  We acknowledged that federal precedent might allow for equitable remedies but, like in the instant case, no authority was offered as to why such a course is proper in light of our state's precedent nor for the proposition that failing to provide those equitable remedies would interfere in the federal scheme of security regulation.  Id. at 776.  We reviewed the approaches of numerous jurisdictions as to whether equity should be available in cases involving an illegal securities agreement.  Id. at 777–82.  The court directly acknowledged Royal Air Prop., Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962), upon which Chan primarily bases his argument, however we expressly declined to adopt the approach set out in that case.  Id. at 777–778, 783.  The analysis provided by this court was only reinforced and further developed by the Supreme Court in its affirmance of the court of appeals decision.  See Go2Net, Inc. v. Freeyellow.com, Inc., 158 Wn.2d 247, 143 P.3d 590 (2006).

Critical to our review of the case before us is the fact that neither party was an investor in these securities, nor was fraud alleged.  This is not a Securities Act case, but rather a contract dispute regarding unpaid compensation which WORC alleges was due to the illegality of the contract.  There is no indication in the record that any investor was defrauded or did not receive what they were owed.  This background is informative in that it bolsters why this court must rely on our state's

---

[5] Ch. 21.20 RCW.

general approach to illegal contracts. Therefore, it was improper for the court to have instructed the jury to consider Chan's estoppel argument to defeat WORC's illegality defense. Further, it is clear that prejudice resulted since the jury's findings were relied upon by the trial court in entering judgment in favor of Chan. We therefore reverse.

This case need not be retried. The jurors considered the evidence presented by the parties and found several critical facts in the special verdict form. They simply should not have been instructed to consider equitable estoppel in response to WORC's affirmative defense of illegality. On remand, the trial court must enter a corrected judgment based on the jury's responses in the special verdict form, without consideration of the answers to questions seven through nine of the special verdict.

Reversed and remanded for entry of corrected judgment.

WE CONCUR:

Andrus, A.C.J.

Appelwick, J.